[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION.
{¶ 1} Plaintiff-appellee Jane Welling and defendant-appellant Michael Welling were married July 25, 1981. During the marriage, Michael Welling suffered from depression, and he began to abuse alcohol. He was gainfully employed until approximately October of 2000, when he left his job with General Motors and took a truck-driving course. A conviction for driving under the influence of alcohol effectively ended his truck-driving career. He then began a home-renovation business, but he was essentially inactive and was living by spending his assets.
 {¶ 2} Jane Welling became concerned about the family's financial situation. In early 2001, she began to pursue a division of the parties' assets. In February of 2001, the parties agreed to divide their financial assets. The division process was completed in April of 2001. The parties agreed that Jane would retain the marital residence and pay $75,000 to Michael Welling. An additional $15,000 payment was to be subject to potential adjustment.
 {¶ 3} The parties physically separated on December 8, 2001. Jane Welling filed a complaint for divorce on April 29, 2002. The unresolved issues were litigated in three separate hearings before a magistrate. The magistrate issued his decision on August 6, 2003. Jane Welling requested findings of fact and conclusions of law. On November 26, 2003, the magistrate issued his decision with findings of fact and conclusions of law. Both parties filed objections to the magistrate's decision. Following a hearing, the trial court ruled on the objections by entry. The final decree of divorce was journalized April 13, 2004.
 {¶ 4} Michael Welling has appealed, raising five assignments of error for our review. His first assignment of error alleges that the trial court erred in failing to issue its own findings of facts and conclusions of law in ruling on the parties' objections to the magistrate's decision.
 {¶ 5} The trial court adopted the magistrate's findings of fact and conclusions of law. Following a hearing, the court departed in some respects from the magistrate's decision. But the trial court's deviation from the magistrate's decision reflected, for the most part, the court's determination of what was equitable under the facts of the case and not a fundamental disagreement with the magistrate's findings of fact and conclusions of law. See Raphael v. Raphael (Nov. 11, 1999), 1st Dist. No. C-980696. The findings of fact and conclusions of law adopted by the trial court were sufficient to set forth the basis of the trial court's decision and to allow this court to review the decision. See id. The decree of divorce journalized by the trial court, along with the magistrate's findings of fact and conclusions of law and other parts of the trial record, provide an adequate basis for this court's review of the issues presented. See Peck v. Peck (1994), 96 Ohio App.3d 731,645 N.E.2d 1300. The first assignment of error is overruled.
 {¶ 6} The second assignment of error alleges that the trial court erred in overruling Michael Welling's objection to the magistrate's determination that Jane Welling had a separate interest of $15,753 in the marital residence.[1]
 {¶ 7} The Wellings closed on the purchase of the marital residence on August 27, 1981. Each of the parties had contributed $1000 of earnest money toward the purchase. A payment of $14,752.73 was required at the closing. The trial court awarded Jane Welling a separate interest in the marital residence of $14,753, adopting the magistrate's determination that the funds for the closing had been paid from her separate property.
 {¶ 8} Michael Welling testified that he sold property he owned on Crest Hills Avenue, for which he received cash in the amount of $10,597.68. He stated that he deposited the cash into his savings account at what was then Central Trust Bank. He further testified that he sold his "mobile home" and deposited the proceeds into the same account. Michael Welling had documentary evidence that on the date of the closing he withdrew $14,559 from his savings account. Although he had no documentary evidence to support his claim, he testified that this money was used to purchase the marital residence. He also had a cancelled check for an additional payment of $47.73 that was required at the closing.
 {¶ 9} Jane Welling testified that she received approximately $16,000 from the sale of a house she owned on Bramble Avenue. She traced the money into her checking account at Fifth/Third Bank. Subsequently, she transferred $18,000 from her Fifth/Third checking account into her Gradison investment account. Jane Welling testified that the funds in her Gradison account were used to purchase the marital residence, but she provided no documentary evidence tracing the funds from her Gradison account to the purchase of the marital residence. On cross-examination, Jane Welling admitted that it was "reasonable" to conclude that Michael Welling provided the funds for the closing on the marital residence.
 {¶ 10} In Kelly v. Kelly (1996), 111 Ohio App.3d 641,676 N.E.2d 1210, we held that "with the enactment of R.C. 3105.171
the characterization of property as separate or marital is a mixed question of law and fact, not discretionary, and such characterization must be supported by sufficient, credible evidence." See also Dooley v. Dooley (Aug. 7, 1998), 1st Dist. No. C-970616. A party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. See Peck v. Peck, supra; Dunn v. Dunn, 1st Dist. Nos. C0-10282, and C-010292, 2002-Ohio-6247.
 {¶ 11} Both Michael and Jane Welling were seeking to have a portion of the marital residence classified as separate property. Each party had the burden of proof, by a preponderance of the evidence, to trace the asset to his or her separate property. Neither party was able to definitively trace the payment of $14,753 for the marital residence by documentary evidence. In fact, Jane Welling testified that it was "reasonable" to conclude that Michael Welling had contributed the money.
 {¶ 12} Following a review of the record, we hold that neither party met the burden of proof to trace the payment for the marital residence to his or her own separate funds. Therefore, the trial court erred in awarding Jane Welling a separate interest of $14,753 in the marital property. The second assignment of error is sustained to the extent that it challenges the trial court's award of $14,753 to Jane Welling as her separate interest in the marital residence. It is overruled to the extent that it challenges the trial court's award of $1000 to Jane Welling as her separate interest in the marital residence.
 {¶ 13} The third assignment of error alleges that the trial court erred in finding that February 2001 was the date of the de facto termination of the parties' marriage.
 {¶ 14} The trial court has broad discretion in determining the date that a marriage terminated. See Berish v. Berish
(1982), 69 Ohio St.2d 318, 432 N.E.2d 183; Raphael v. Raphael,
supra. R.C. 3105.171(A)(2), which states that the trial court "may select dates that it considers equitable in determining marital property," represents a codification of the Berish rule that the trial court has discretion in determining the date of the de facto termination of a marriage. See Raphael v. Raphael,
supra. In order to achieve an equitable division of the marital assets, the trial court may use alternate dates for valuing marital property. See Berger v. Berger, 1st Dist. No. C-030631,2004-Ohio-5614. Evidence of the end of the parties' economic partnership may support the adoption of a de facto termination date. See Estate of Dunlap v. Dunlap (Mar. 27, 1996), 1st Dist. Nos. C-940033 and C-940050.
 {¶ 15} The Wellings took steps to divide their financial assets in February of 2001. Although the division was not completed until April 2001, the assets were valued as of February 2001. The record supports the trial court's determination that February 2001 was the date of the de facto termination of the marriage. The third assignment of error is overruled.
 {¶ 16} The fourth and fifth assignments of error allege that the trial court erred in overruling Michael Welling's objections to the magistrate's findings that $5900 related to the Welling 
Dunn investment and his "pre-marital interest" in his Milacron distribution should be characterized as marital property.
 {¶ 17} Separate property includes any real or personal property, or interest in real or personal property, that was acquired by one spouse prior to the date of the marriage. See R.C. 3105.171(A)(6)(a)(ii). The commingling of separate property with marital property does not destroy the identity of the separate property as long as the separate property is traceable. See R.C. 3105.171(A)(6)(b); Dooley v. Dooley, supra. The burden, by a preponderance of the evidence, is on the party seeking to have an asset classified as separate property to trace the asset to separate property. See Peck v. Peck, supra; Dunnv. Dunn, supra.
 {¶ 18} Michael Welling claimed that six months prior to his marriage to Jane the value of his interest in the Welling Dunn real estate partnership was $5900, and that this amount should have been awarded to him as his separate property. The "settlement statement" for the sale of the Welling Dunn partnership real estate lists both Michael and Jane Welling as the sellers. The proceeds of the sale totaled $32,826.23. $25,826.23 was deposited into Michael Welling's checking account at PNC Bank. Michael Welling did not account for $7000 of the proceeds. The bank account into which the $25,826.23 was deposited contained $634 as of February 2001. Michael Welling testified that the funds were used to pay expenses for other rental property. He failed to trace the $5900 into any asset that was in existence at the time of the termination of the marriage.
 {¶ 19} Regarding the Milacron distribution, Michael Welling stated, "To the best of my recollection, we put it in our mutual funds with all the other money that came from Milacron. I don't know what — I probably had some vacation money that went along with that. But whatever — whatever they compensate you after 15 years, they finish everything up and — I can't remember exactly what we did with it, but I assume that, just like at that time all my paychecks from here I just gave to Jane and she deposited them. So I assume that's what happened to this." (T.p. 91 [February 5, 2003].)
 {¶ 20} Michael Welling did not offer any evidence as to the present location of the Milacron funds. He could not testify with any certainty about what became of the Milacron funds.
 {¶ 21} Following a review of the record, we hold that Michael Welling failed to meet his burden to trace the claimed assets to his separate property. He did not present sufficient evidence that any of the claimed funds could have been traced and separated. The fourth and fifth assignments of error are overruled.
 {¶ 22} The judgment of the trial court is reversed solely for the reasons set forth in our disposition of the second assignment of error. The cause is remanded for the trial court to reconsider the division of property in light of our disposition of the second assignment of error and to render a judgment consistent with this decision, and for further proceedings consistent with law and this decision.
Judgment reversed and cause remanded.
Sundermann and Hendon, JJ., concur.
[1] The magistrate awarded Michael Welling $1048 as his separate interest in the marital residence.