DECISION
{¶ 1} This case was filed in 1997. It has gone on for almost a decade. It has strained the parties, their assets, and the courts. Perhaps it will finally end with this decision, though we fear that may be a vain hope.
 {¶ 2} We have seen few "domestic relations cases more contentious and acrimonious or that have consumed more judicial time and resources than this case. The parties * * * have engaged in thoroughly inappropriate behavior that has been detrimental to the resolution of their case."[1] Allegations of various types of misconduct have been strewn throughout the proceedings. One party has even been (wrongfully) thrown into jail.
 {¶ 3} After reviewing the voluminous record, we conclude that the magistrate and the trial court did a yeoman's job of sorting through the mess the parties had made of their affairs. Our review of the record shows no abuse of discretion by the trial court — in fact, the trial court exercised the only appropriate discretion in, or even near, this case. Of course, both parties have appealed.
 I. This divorce was like an amputation: they survived it, but with less of each of them. {¶ 4} In May 1996, plaintiff-appellee/cross-appellant Constance P. Abolfatzadeh ("Connie Pfau") and defendant-appellant/cross-appellee Shahriar Abolfatzadeh ("Tony Abol") separated. The couple had been married since October 1981. In what can only be described as unadulterated animosity, Abol and Pfau consumed more than eight years and 55 hearings in domestic relations court attempting to divide their property. And while their divorce became effective in March 2000, Abol and Pfau have continued the fight over their property division.
 {¶ 5} Abol and Pfau had considerable marital property. During their relationship, they had successfully accumulated over $2.1 million in real estate. The great majority of this property was rental property. Abol had operated the marital rental company for many years leading up to the separation, while Pfau had worked as an independent consultant in the health-care field. But the couple also had started up two Internet-based consulting companies, Professional Consulting Network ("PCN") and UNIUS. The litigation primarily focused on the funding and management of the marital businesses — Abol left the rental company and controlled PCN and UNIUS, and Pfau managed the rental properties. It was the division of this property that is the impetus for this appeal.
 {¶ 6} One of the other central issues in this divorce was the parties' conduct and attitude during the litigation. From the beginning, Abol accused Pfau of attempting to perpetrate a fraud on the court. And while many of his claims were unsubstantiated, Abol was correct in pointing out that Pfau had an inappropriate relationship with the court-appointed receiver, Philip Toma.
 {¶ 7} In 1999, Pfau moved to have the court appoint a receiver for the marital property and submitted two names for consideration. One of the names was Toma, but Pfau never disclosed to the court that she and Toma were friends. The magistrate even commented that "if that disclosure had been made to the court or to Wife's counsel, or if Wife had never submitted Mr. Toma's name for consideration, much that the parties and court have had to go through over the last three to four years could have been avoided."
 {¶ 8} Of the inappropriate relationship between Pfau and Toma, the court concluded that Toma had made several threatening phone calls to Abol, that Pfau was intimately involved with the real-estate business while Toma was the receiver — even writing the checks for Toma after he had already signed them, and that Pfau assumed a false name for Toma to write checks to her for cleaning some of the real-estate properties. The court also concluded that Pfau and Toma were more than just casual friends. Because the evidence of the relationship's inappropriateness was so overwhelming, Toma even returned 50% of his fees to the current receiver.
 {¶ 9} The magistrate was so disturbed by the behavior of Pfau that he stated that "it has become apparent that Wife has misrepresented herself to this Court and has engaged in conduct which in essence has perpetuated a fraud upon this Court." But it was not Pfau's relationship with Toma alone that led the magistrate to come to this conclusion. Pfau also had Abol incarcerated on multiple occasions for violating a restraining order. These incarcerations occurred despite the fact that Abol had permission from the court to attend certain functions at Hyde Park Community Methodist Church. Abol was to be present at the church on Tuesdays and Fridays. Despite this understanding, Pfau would go to the church's parking lot and then call the police when Abol left the functions. In each instance that Abol was arrested, he was found not guilty or the charges were dismissed.
 {¶ 10} This is not to say that Abol was any less at fault for the length and escalation of the litigation. Abol made many outlandish and unsubstantiated allegations regarding Pfau's counsel and was subject to several Civ.R. 11 orders. The court required the clerk to remove some of Abol's filings from the record due to their inflammatory and possibly libelous content. It is easy to conclude that both parties are to blame for this arduous litigation that has done little but waste judicial — and marital — resources.
 {¶ 11} The magistrate concluded that "the bottom line is that neither party has conducted themselves in a manner that is expected by the court, or reasonable by any standard. The parties lost sight of the goal of these proceedings, which has been to identify and divide their marital property and instead have used these proceedings as a vehicle to attempt to inflict damage upon one another. In the process, they have squandered some of their assets and caused themselves to go through years of litigation over matters that could have been resolved relatively quickly given the size of their marital estate." (Emphasis added.)
 II. The Decision {¶ 12} In July 2003, the magistrate set forth his decision, which the domestic relations court adopted. Of course, both parties objected to the decision. In October 2004, the court overruled Abol's and Pfau's objections to the magistrate's decision and set the entry of a final decree of divorce for the next month.
 {¶ 13} The magistrate determined that Pfau was entitled to an initial distribution of $97,599.63. After this initial distribution, the court held, Pfau was to retain a parcel of real property as her separate property, and the remaining assets of the parties would be divided equally. Additionally, the parties were responsible for their own attorney fees, and neither party was required to pay spousal support.
 {¶ 14} The court's findings of fact illustrate how the magistrate came up with the initial distribution of $97,599.63:
{¶ 15} Household Goods: The parties stipulated that there were two Sea Doos in the possession of Abol — one worth $1,310 and the other $1,590. In addition, there was a double trailer worth $340. Abol was charged with the value of these items since he had failed to determine whether the jet skis or the trailer remained in the garage where he had stored them.
{¶ 16} Other Assets (PCN UNIUS): The magistrate found that, due to each party's efforts and planning in developing PCN and UNIUS, each of the two companies was marital property. Of the $584,091.13 that passed through these two businesses, the magistrate held that Abol did not prove that the $65,927.66 in payments to himself was used for marital purposes instead of his own support. Therefore, the magistrate determined that Pfau was owed a credit of $32,963.83. The magistrate also found that the computer equipment should be charged, as having been received by Abol, with a value of $121,454, the original cost of the equipment. The magistrate determined that Pfau deserved a credit of $60,727 for this equipment.
{¶ 17} 1997 Tax Return: Under a court order, the parties agreed to file a joint 1997 tax return and to apply all the refund to the outstanding debt owed to Fifth/Third Bank to stop a pending foreclosure action against one of the parties' properties. But Abol refused to sign the joint tax return and filed married, but separate, returns. The failure to sign resulted in Fifth/Third proceeding with the foreclosure. Of the $86,230.88 received from the sale of the property, $60,946.82 paid off an equity line of credit. The remaining $25,284.06 was assessed only against Abol for attorney fees, legal costs, and credit-card debts. The magistrate found that Pfau lost her share of the marital money taken from the equity realized in the sale of this home and was therefore entitled to a credit of $12,642.03.
{¶ 18} Section 8 Housing Fees: During the proceedings, the court ordered that the rental properties be divided equally between the parties. After this division, Pfau incorrectly received $6,000 in Section 8 rental income for units that Abol was controlling. Additionally, Abol was forced to pay $1,927 to the Section 8 program for an overpayment of Section 8 rent retained by Pfau. Thus, the magistrate ordered that Abol was entitled to a credit of $7,927.
{¶ 19} Pineridge Property: The magistrate found that Pfau had paid $31,858 of her separate funds to Fifth/Third to keep this property out of foreclosure. The magistrate thus ordered that Pfau was entitled to full credit for these funds.
{¶ 20} RDI: UNIUS was sued by RDI Marketing and Research, Inc., for breach of contract. The contract in question was entered into after the parties' divorce complaint was filed. RDI used a judgment in its favor to foreclose on two properties owned by Abol Investments. RDI was paid a total of $26,519.02. The magistrate found that Pfau was entitled to a credit of $13,259.51.
{¶ 21} Insurance Proceeds: After the management of the properties was divided, one of the properties under Abol's control was damaged by fire. The insurance company issued a check for $16,720.81 for the damage. Abol used only $6,450.94 to repair the property. Because there was no accounting of the balance of the funds, the magistrate believed that Pfau was entitled to a credit of $5,134.94.
{¶ 22} Funds on Deposit: The magistrate found that Abol had removed $12,000 from a marital account that he could not sufficiently show was used for marital property, so Pfau was entitled to a credit of $6,000. Additionally, the magistrate found that Abol had removed $54,000 from a personal account the day after he was served with the divorce complaint. Because Abol could not show that the funds were used for marital purposes, Pfau was entitled to a credit of $27,000.
{¶ 23} Stock: Abol sold marital stock worth $25,121 and failed to present evidence to the court that the funds were used for marital purposes. Thus Pfau was entitled to a credit of $12,560.50.
{¶ 24} Rapid Run Property: A court order required each party to pay half the expenses for the Rapid Run property. Pfau paid all the expenses, totaling $1960.90, and thus was entitled to a credit of $980.45.
 {¶ 25} The magistrate found that the total of these credits was $195,199.26. Due to Pfau's conduct in moving the court to appoint her friend as the receiver, and in having Abol thrown in jail in violation of restraining orders when he was within his lawful right to be in a particular place, the magistrate reduced Pfau's initial distribution by 50% to $97,599.63.
 {¶ 26} Abol has appealed the court's decision with respect to the property division, arguing that the magistrate and the trial court abused their discretion by making mistakes of fact on a number of property issues. Pfau has cross-appealed, claiming: (1) that the court made a mathematical error in its division of property, and (2) that the court's reduction of the initial distribution by 50% was a sanction equal to criminal contempt, without the necessary procedural safeguards.
 III. Standard of Review {¶ 27} The Ohio Supreme Court has stated that a trial court must have discretion to do what is equitable upon the facts and circumstances of each divorce case.[2] "Of course, a trial court's discretion, though broad, is not unlimited. A reviewing court may modify or reverse a property division, if it finds that the trial court abused its discretion in dividing the property as it did."[3]
 {¶ 28} The Ohio Supreme Court has also held that a trial court in any domestic relations action has broad discretion in fashioning an equitable division of marital property.[4]
And there is no presumption that marital property be divided equally upon divorce. Rather, a potentially equal division should be the starting point of the trial court's analysis before it considers the factors listed in R.C. 3105.171 and all other relevant factors.[5]
 {¶ 29} "A Court of Common Pleas has broad discretion to determine what property division is equitable in a divorce proceeding. The mere fact that a property division is unequal does not, standing alone, amount to an abuse of discretion."[6]
 {¶ 30} In reviewing the equity of a property division, an appellate court is bound to follow various guidelines, including that the trial court's judgment cannot be disturbed on appeal absent a showing that the court abused its discretion in formulating its division of the marital assets and liabilities of the parties.[7] The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable.[8] Unreasonable means that no sound reasoning process supports the decision.[9] It is not enough that the reviewing court, if deciding the issue de novo, would not have found that reasoning process to be persuasive because of other reasoning processes that would support a contrary result.[10]
 IV. The parties abused their discretion in fighting eight years over property, but the court did not. {¶ 31} Abol has raised four assignments of error, all of which center on the magistrate's division of the marital property. Thus, it is appropriate to analyze his assignments not as four separate issues, but as one assignment of error, and to determine whether the magistrate and the trial court abused their discretion in the division of the marital property. We attempt to take each of the voluminous factual allegations in turn.
 A. Marital Funds {¶ 32} The magistrate found that Abol had withdrawn $12,000 in April 1997 from a marital account and $54,000 from his personal checking account the day after he was served with the divorce complaint. The magistrate held that Abol could not sufficiently show that any of these funds were used for marital purposes and therefore awarded Pfau $6,000 and $27,000, respectively, for these occurrences.
 {¶ 33} Abol does not dispute that he removed these funds from these accounts, but maintains that he merely moved them to UNIUS's account. The record indicates that Abol did make deposits of these exact amounts into the UNIUS account the days following the withdrawals from the marital accounts.
 {¶ 34} The magistrate also found that Abol had sold marital stock worth $25,121 and presented no evidence that these funds were used for marital purposes. Thus, the court found that Pfau was entitled to a credit of $12,560.50. Abol again does not dispute the stock sale, but maintains that since he deposited the proceeds of the sale into UNIUS's account, he did not remove any money from the marital property.
 {¶ 35} The magistrate further found that Abol did not provide sufficient proof that the $65,927.66 he had received from UNIUS was used for marital purposes and not for his own support. The magistrate thus ruled that Abol would be charged as having received this as part of his distribution of marital assets and that Pfau would be entitled to an additional credit of $32,963.83.
 {¶ 36} Abol now contends that the evidence illustrates that all but $5,750 of the $65,927.66 was accounted for in business-related expenses, with the remaining money having been used for living expenses by Abol.
 {¶ 37} In all the instances cited by Abol, he was able to point to corresponding deposits made into the UNIUS account. Despite this evidence, the magistrate was not persuaded that because these assets were moved into a marital business account, the funds necessarily were being used for marital purposes. We are confined solely to the record itself. Absent a clear-cut abuse of discretion, we are reluctant to second-guess the magistrate and the trial court. Thus, we conclude that the magistrate and the trial court did not abuse their discretion when making these property divisions.
 B. Automobiles {¶ 38} The magistrate found that there were no automobiles that contained any marital equity to be divided between the parties. Abol claims that, after the parties' separation, Pfau traded in a Lincoln Mark VII and received a $7,600 credit toward the purchase of a Jeep Cherokee. While we agree that the record demonstrates that Pfau traded in the Lincoln Mark VII while purchasing the Jeep Cherokee, no evidence was submitted to demonstrate the value of the credit received by Pfau. Thus, without evidence of the credit, the magistrate did not abuse his discretion when determining that there was no automobile with marital equity to be divided. The burden was on Abol to demonstrate this value before the magistrate could conclude that a marital asset was involved.
 C. Unaccounted Money and Stock {¶ 39} Abol contends that Pfau sold or transferred marital stock to accounts Pfau never reported to the court. Abol points out three such instances, including when she sold 300 shares of stock for $4,884.70, transferred $17,617.17 worth of marital stock to another unreported account, and sold $16,102 of marital stock she reported on her tax return.
 {¶ 40} Abol may well be correct that Pfau misappropriated funds. But as an appellate court, we are confined to the record. Because no evidence was presented to the trial court of these unreported accounts, we are precluded from finding an abuse of discretion by the magistrate in failing to award any credits to Abol.
 {¶ 41} Additionally, Abol's allegation that Pfau received $460,779 in rental income from the parties' rental business may well be true. But just because Pfau did not provide an accounting for the parties' rental business from 1996-1997 does not mean that funds were necessarily misappropriated. The burden to account for the money lies on the parties to the litigation.
 D. Computer Office Equipment {¶ 42} Abol maintains that the magistrate abused his discretion by assigning a value of $121,454 for the computer and office equipment he controlled after the separation. He believes that while he sold a few pieces of the equipment, all proceeds went into the UNIUS account, and all remaining pieces were worthless.
 {¶ 43} The accountant hired to review the business records reported that $82,166.37 in book-valued equipment for PCN and UNIUS was unaccounted for, and that there was a question about how it was disposed of after the companies went out of business. The original cost of the equipment was $121,454. The magistrate found that Abol transferred all this equipment to himself when the parties separated, and that he disposed of the equipment. Because Abol did not provide evidence of the amount of money he received from the sale of the equipment, and because he did not trace any such funds, the magistrate found that Abol would be charged with having received the equipment. The magistrate also found that the value should be $121,454, as this was the most credible evidence presented to the court.
 {¶ 44} For purposes of dividing the marital property, the trial court may use the date of the marriage or the date of the final hearing.[11] If the trial court determines that the use of either of these dates would be inequitable, the trial court may select a more equitable date.[12]
 {¶ 45} "Equity may occasionally require valuation as of the date of the de facto termination of the marriage. The circumstances of a particular case may make a date prior to trial more equitable for the recognition, determination and valuation of relative equities in marital assets."[13] "In order to do equity, a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or de facto termination of the marriage, where reasonable under the facts and circumstances presented in a particular case. In this fashion, the trial court will have the necessary flexibility to exercise its discretion in making truly equitable awards consistent with legitimate expectations of the parties."[14]
 {¶ 46} In this case, the court determined that the valuation of the computer and office equipment should be the original value of the equipment — $121,454. The magistrate did not abuse his discretion by setting this valuation. Because Abol could not provide an accounting for what equipment was sold and what remained, it was impossible for the magistrate to determine a fair market value. Abol's position that the equipment was worthless may well be true. But the court was left with no option but to take the original value of the equipment, because Abol did not provide adequate tracing or evidence of the sale of the equipment. Thus, the magistrate did not abuse his discretion by setting the value of the equipment at $121,454.
 E. Premarital Property {¶ 47} Pfau purchased the Prosperity Place property shortly before her marriage to Abol. Abol argues that the magistrate and the trial court abused their discretion by finding that this property was Pfau's separate property. He maintains that marital assets were used to make repairs to the foundation walls, and that the appreciation in the property's value should have been deemed marital property.
 {¶ 48} The Ohio Supreme Court has stated that R.C.3105.17(A)(3)(a)(iii) unambiguously "mandates that when either spouse makes a labor, money, or an in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed marital property."[15] Thus, if Abol demonstrated that the Prosperity Place property increased in value due to either of the parties' efforts during the marriage, it would have been marital property. But from a review of the record, it does not appear that Abol ever managed to provide such evidence. Thus, the magistrate did not abuse his discretion when deciding that the Prosperity Place property was Pfau's separate property.
 {¶ 49} Abol also argues that he owned property on Delta Avenue prior to the parties' marriage and was not properly credited for his premarital property. The property was a rental property and generated approximately $38,650 in profits from the rental income and the eventual sale. Abol is correct to assert that this property was separate property as defined by R.C.3105.171(A)(6)(a). But the sale of the property in 1987 created profits that were commingled with other marital funds. A sale of separate property nine years prior to the parties' separation and the subsequent commingling of funds without adequate tracing did not require the magistrate or the trial court to make a finding of separate property. The magistrate did not abuse his discretion in finding that Abol had not adequately traced these funds.
 F. Assets and Liabilities {¶ 50} The magistrate's decision on bank and investment accounts listed four bank accounts, a stock-trading account, and two investment accounts. The magistrate found that these accounts were all marital in nature and that they were to be divided equally. Abol contends that the magistrate failed to take into consideration other bank and investment accounts that Pfau controlled.
 {¶ 51} Abol's claims are without merit. Abol moved to compel Pfau to submit documentation of these other accounts after the 55 property hearings had been completed. The magistrate did not abuse his discretion by overruling the motion. If Abol was concerned about whether these accounts were marital or separate property, there was ample time to pursue the issue during the eight years of property hearings.
 {¶ 52} Abol's further contention that Pfau received or took hundreds of thousands of dollars of marital funds and transferred them to unknown accounts could be true. But Abol failed to provide evidence to persuade the magistrate. Again we are not persuaded that the magistrate abused his discretion by determining that Abol had not proved that Pfau acted fraudulently in this respect.
 {¶ 53} Finally, Abol contends that the magistrate failed to order a payment from the real-estate business to his mother for a loan she had provided in 1989. While the magistrate did not comment on this liability in the final decision, he stated at the time the evidence was introduced that the business would be liable for its own liabilities, not the individual parties. Thus, Abol's mother's recourse is to bring suit against the rental-property business.
 {¶ 54} Abol has raised many plausible arguments on appeal. But an appellate court is confined to the record before it. Abol can point to some evidence in the record that demonstrates transfers of funds, sale of an automobile, loans by family members, and improvements in premarital property. But the problem lies in the disconnection that Abol encountered when seeing evidence on paper and proving the correlatives in court. Abol was not served well by litigating pro se, and as a result, he failed to provide the competent and credible evidence needed to persuade the magistrate and the court that he had not improperly used marital funds. Thus, we find no abuse of discretion by the magistrate and the trial court, and overrule Abol's assignments of error.
 V. Cross-Appeal: Mathematical Error was not Raised in Objections to the Magistrate's Decision {¶ 55} Pfau's first assignment of error alleges that the magistrate and the trial court made a simple mathematical error that can be rectified by this court. Pfau does not argue that there was an abuse of discretion, but merely that the magistrate's and the trial court's calculation was in error.
 {¶ 56} Pfau provides the following as an example to illustrate the mathematical error: "If husband and wife have $600,000 in marital assets and those assets are evenly divided, each party would receive $300,000. If, however, husband misappropriates $100,000, how the court implements curative steps may give rise to a simple mathematical error. Consider two scenarios: (1) the court gives the wife an initial distributive award of $50,000 (half of the misappropriated $100,000) off the top of the remaining $500,000, and then splits the remaining $450,000 between the parties. This results in a final distribution of $325,000 to husband and $275,000 to wife; or (2) the court gives the wife an initial distributive award of $100,000, and splits the remaining $400,000 between the parties. This results in a final distribution of $300,000 to each party."
 {¶ 57} While Pfau's argument may have some merit, she failed to raise this argument in her objections before the trial court. As we have previously held, Civ.R. 53(E)(3) governs objections to a magistrate's findings of fact and conclusions of law.[16]
The rule provides that a party may file written objections to a magistrate's findings and conclusions with the trial court within fourteen days of the filing of the magistrate's decision.[17] The rule further mandates that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."[18]
 {¶ 58} Absent a showing that the trial court's independent examination, conducted under Civ.R. 53(D)(4)(a), failed to account for errors of law or other defects "on the face of the magistrate's decision," appellants may not assign error for the first time on appeal.[19] Under Civ.R. 53(E)(3)(b), we have no recourse but to hold that Pfau is barred from now arguing that the magistrate erred in making the findings of fact or in reaching the conclusions of law.
 {¶ 59} Furthermore, even if Pfau had raised this claim in the trial court, we are not persuaded that the court erred in this instance. While Pfau is correct in her mathematical example, we are inclined to believe that the magistrate and the reviewing trial court were aware of this possibility when setting the initial distributive award. As stated in both the magistrate's and trial court's decisions, the wife "engaged in conduct which in essence perpetrated a fraud upon this court." It was because of her misconduct that her initial distribution was reduced.
 VI. Cross-appeal: Contempt? {¶ 60} Pfau's second assignment of error claims that the magistrate's and the trial court's reduction of her initial distribution by 50% was tantamount to a finding of criminal contempt, and that the court erroneously imposed such a sanction in a summary manner.
 {¶ 61} Again we are not persuaded by Pfau's argument. The reduction of her initial distributive award was not a finding of criminal contempt. Instead, the court was relying on its dual roles as a court of law and a court of equity. Under R.C.3105.011, the domestic relations court "has full equitable powers and jurisdiction appropriate to the determination of all domestic relations matters." By reducing the distributive award by 50%, the court was achieving what it felt was equitable for all the misconduct and fraud that Pfau had committed. Since the court had broad discretion in fashioning the distribution and property division, the court was well within its discretion in reducing Pfau's initial distribution. Thus, we find no abuse of discretion, and Pfau's second assignment of error is overruled.
 VII. Conclusion {¶ 62} After reviewing the lengthy record, we conclude that the trial court's decision was meticulous, despite the parties' numerous motions and general lack of civility. Our review of the record shows no abuse of discretion by the trial court.
 {¶ 63} We overrule the parties' assignments of errors and affirm the trial court's judgment.
Judgment affirmed.
Doan, P.J., and Sundermann, J., concur.
[1] See Lassiter v. Lassiter, 1st Dist. No. C-010309, 2002-Ohio-3136, at ¶ 1.
[2] See Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355,421 N.E.2d 1293.
[3] Id., citing Section 3(B), Article IV, of the Ohio Constitution; App.R. 12.
[4] See Berish v. Berish (1982), 69 Ohio St.2d 318, 319-320,432 N.E.2d 183.
[5] Cherry, 66 Ohio St.2d 348, paragraph one of the syllabus.
[6] Id., paragraph two of the syllabus.
[7] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218,450 N.E.2d 1140; Cherry, 66 Ohio St.3d at 355; Dennison v.Dennison (1956), 165 Ohio St. 146, 150, 134 N.E.2d 574.
[8] Blakemore, 5 Ohio St.3d at 219, quoting State v. Adams
(1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
[9] See AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161,553 N.E.2d 597; State v. Echols (1998), 128 Ohio App.3d 677, 669-670,716 N.E.2d 728.
[10] Id.
[11] R.C. 3105.171(A)(2)(a).
[12] R.C. 3105.171(A)(2)(b).
[13] See Berish, 69 Ohio St.2d at 320.
[14] Id. at 321.
[15] See Middendorf v. Middendorf, 82 Ohio St.3d 397,400-401, 1998-Ohio-403, 696 N.E.2d 575.
[16] See Lesick v. Medgroup Mgmt. (Sept. 25, 1998), 1st Dist. Nos. C-970590 and C-970612.
[17] Civ.R. 53(E)(3)(a).
[18] Civ.R. 53(E)(3)(b).
[19] See Lesick v. Medgroup Mgmt. (Sept. 25, 1998), 1st Dist. Nos. C-970590 and C-970612.