THOMAS, Appellant,

v.

THOMAS, Appellee.

[Cite as *Thomas v. Thomas,* 171 Ohio App.3d 272, 2007-Ohio-2016.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060430.

Decided April 27, 2007.

Croswell & Adams, L.P.A., Gregory L. Adams, and Julia A. Sears, for appellant.

Taft, Stettinius & Hollister, L.L.P., and Aimee L. Keller, for appellee.

DINKELACKER, Judge.

{¶ 1} Plaintiff-appellant, Robin Gayle Thomas, appeals from a divorce decree ending her marriage to defendant-appellee, David Andrew Thomas ("Andy"), and dividing the parties' property. We find merit in one of her assignments of error, and we reverse the trial court's judgment in part.

{¶ 2} The parties had substantial assets. The primary asset was a business, which was actually an amalgamation of four companies. The primary company was Sure–Wood Forest Products, Inc. For simplicity, we refer to Sure–Wood when discussing the business.

{¶ 3} Robin had purchased the business during the marriage. Through her substantial efforts, it had become a multi-million-dollar enterprise. The trial court accepted the valuation made by Robin's expert and found that Sure–Wood was worth $9 million, instead of $13 million, as Andy's expert had testified. As part of the property division, the court awarded Andy $4.5 million, half of Sure–Wood's value.

{¶ 4} In this appeal, Robin presents two assignments of error. In her first assignment of error, she contends that the trial court erred in failing to consider the tax consequences associated with the property award. She argues that the

property division effectively forces her to dispose of assets to meet her obligations, causing her to incur tax consequences, and that those consequences rendered the property division inequitable. This assignment of error is not well taken.

{¶ 5} R.C. 3105.171(C)(1) provides that the court should divide marital property equally unless an equal division would be inequitable. R.C. 3105.171(F) sets forth the factors the court must consider in making its decision.[1] The trial court has broad discretion in fashioning an equitable division of property.[2] An appellate court will not reverse the trial court's decision absent an abuse of that discretion.[3] Further, an appellate court should not review discrete aspects of the property division out of the context of the entire award.[4]

{¶ 6} R.C. 3105.171(F)(6) requires the trial court to consider the tax consequences when dividing and awarding marital property, as long as they are not speculative.[5] If an award of property, in effect, forces a party to dispose of an asset to meet an obligation the court has imposed, the court must consider the tax consequences.[6]

{¶ 7} First, we note that in analyzing the issue, the magistrate's report incorrectly stated that "Ohio law * * * does not allow for the deduction of tax consequences on property that is not actually being sold." But it went on to accurately summarize the law. The court did not, as Robin contends, fail to consider the tax consequences. Instead, it correctly concluded that the tax consequences were speculative.

{¶ 8} The trial court ordered Robin to pay $4.5 million to Andy, his share of the value of the business. Robin contends that it essentially ordered a sale of one-half of the business and that such a sale would involve substantial tax consequences. She presented expert testimony about those consequences.

---

1. *Zerbe v. Zerbe*, 1st Dist. Nos. C–040035 and C–040036, 2005-Ohio-1180, 2005 WL 627781, ¶ 30.

2. *Berish v. Berish* (1982), 69 Ohio St.2d 318, 319, 23 O.O.3d 296, 432 N.E.2d 183; *Zerbe*, at ¶ 30.

3. *Middendorf v. Middendorf* (1998), 82 Ohio St.3d 397, 401, 696 N.E.2d 575.

4. *Zerbe*, at ¶ 30.

5. *Herrmann v. Herrmann* (Nov. 6, 2000), 12th Dist. Nos. CA99–01–006 and CA99–01–011, 2000 WL 1671045; *Olenik v. Olenik* (Sept. 18, 1998), 7th Dist. No. 94 CA 139, 1998 WL 668162; *Day v. Day* (1988), 40 Ohio App.3d 155, 159, 532 N.E.2d 201.

6. *Gould v. Gould*, 12th Dist. No. CA2004–01–010, 2005-Ohio-416, 2005 WL 280834, ¶ 48; *Olenik* ; *Day*, 40 Ohio App.3d at 159, 532 N.E.2d 201.

{¶ 9} The flaw in this argument is that nothing in the trial court's order actually required her to sell half the business. As the court pointed out, she may never sell the business, and "she will never experience any tax consequences while continuing to enjoy the extensive benefits of owning the companies, including their large income flow and expected annual growth of 10%—20% per year." Under the circumstances, we cannot hold that the trial court abused its discretion in finding that the tax consequences were speculative.[7]

{¶ 10} Robin also presented evidence that paying Andy $4.5 million would require her to generate income of over $5 million. To pay Robin that amount of income, the business would have to generate additional profits of over $9 million on gross sales of over $38 million, which would have substantial tax consequences. Again, the court's order does not require her to pay the money out of dividend income. Thus, the consequences were speculative; many ways may exist to structure the payment to minimize tax consequences. Further, we find it somewhat disingenuous to argue that she has to pay taxes on the income used to generate dividends to pay Andy's share. She would have to pay taxes on the income in any event.

{¶ 11} Under the circumstances, we cannot hold that the trial court's finding that any tax consequences were speculative was so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion.[8] Further, this determination did not render the overall property division inequitable. We overrule Robin's first assignment of error.

{¶ 12} In her second assignment of error, Robin contends that the trial court erred in ordering her to pay Andy "interest on his portion of the property division." She argues that any increase in value that occurs to property after the de facto termination of the marriage due to one party's efforts belongs solely to that party. She also argues that the trial court's use of a ten percent interest rate was not supported by the evidence. We find some merit in this assignment of error.

{¶ 13} The trial court found that the de facto termination of the marriage occurred in February 2002. The court journalized the magistrate's report on December 6, 2005, and the divorce decree on April 27, 2006. In her report, the magistrate stated that "[s]ince the parties have separated, Wife has had sole use of the millions of dollars in income to fund growth for the company. Husband is

---

7. See *Gould*, at ¶ 49; *Bauman v. Bauman*, 6th Dist. No. E–01–025, 2002-Ohio-2172, ¶ 17; *Schroeder v. Schroeder* (Aug. 18, 2000), 1st Dist. No. C–990532, 2000 WL 1161999; *Olenik*.

8. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 450 N.E.2d 1140; *Zerbe*, ¶ 34.

entitled to share in the growth that was made possible by the use of his half of the companies and their income. The most appropriate way to determine the growth that Husband is entitled to is to look at the growth of the company. [Robin's expert] used a 10% compounded growth rate for the future of the company indefinitely into the future."

{¶ 14} The magistrate went on to set out a "recapitulation of marital property division," which listed each piece of property both Andy and Robin were to receive in the property division and its value in separate columns. She then stated that "Robin shall pay to Andy the net difference between their two columns as listed in the above recapitulation, within six months of the journalization of this decision, plus 10% simple interest, per year, effective Feb. 14, 2002." Paying the ten percent on the difference between the amounts of property the court awarded the parties did not follow, since the idea was to compensate Andy for the use of his money.

{¶ 15} But even though the trial court overruled Robin's objections and adopted the magistrate's report, the decree contained different language. It stated that "[p]laintiff shall pay defendant 10% simple interest effective February 14, 2002 until payment on * * * $4,500,000 as half of the marital interest in the companies. This amount is $1,800,000 as of February 13, 2006 and $37,500 per month thereafter until the $4,500,000 is paid."

{¶ 16} Robin is correct in this case when she contends that Andy was not entitled to share in the growth of the company after the de facto termination of the marriage in February 2002 because the court used that date to value the business. The court's decision to set that date as the de facto termination of the marriage was within its discretion and was supported by the evidence.[9] While it had discretion to use a different valuation date for any of the parties' assets as long as it adequately explained its reasons for doing so, it used the same valuation date for all the assets.[10] Consequently, any growth in the company that occurred after the de facto termination date was not marital property.[11]

{¶ 17} Andy contends that the interest payment was not due to the increased value of the property. He argues that it was a "usage charge" for Robin having

---

**9.** See R.C. 3105.171(A)(2)(b); *Berish v. Berish* (1982), 69 Ohio St.2d 318, 319–321, 23 O.O.3d 296, 432 N.E.2d 183; *Welling v. Welling,* 1st Dist. No. C–040290, 2005-Ohio-6818, 2005 WL 3501855, ¶ 14.

**10.** *Wingate v. Wingate* (Jan. 26, 2001), 6th Dist. No. L–99–1018, 2001 WL 60721.

**11.** See R.C. 3105.171(A)(3)(a); *Middendorf,* 82 Ohio St.3d at 399–401, 696 N.E.2d 575; *Metz v. Metz,* 1st Dist. No. C–050463, 2007-Ohio-549, 2007 WL 431014, ¶ 14; *Abolfatzadeh v. Abolfatzadeh,* 1st Dist. Nos. C–050039 and C–050056, 2006-Ohio-573, 2006 WL 305441, ¶ 44–45.

the use of his share of the business for the four years the divorce was pending. We agree. After all, the very definition of interest is a fee or charge for the use of money.[12]

{¶ 18} Andy also contends that a charge for the use of the money that he could not use was equitable. Again, we agree. Such an award of interest was within the trial court's discretion.[13] But we take issue with how the court characterized the interest and how it determined the interest rate.

{¶ 19} If the interest was not due to the increased value of the business, then the interest rate should not have been tied to the company's growth rate, particularly since Andy was not entitled to share in the growth of the company after the date the court valued the business, in this case the de-facto-termination date of the marriage. Therefore, the court erred in setting the interest rate at ten percent based on Robin's expert's testimony about the company's growth.

{¶ 20} We note that R.C. 1343.03, which sets forth the statutory interest rate, does not technically apply in the case although the court could appropriately use it as a guideline.[14] The statutory rate was ten percent at one time.[15] But the legislature has amended the statutes and tied the statutory interest rate to the federal short-term rate.[16]

{¶ 21} Under the circumstances, we hold that the trial court abused its discretion in determining the interest rate. We sustain Robin's second assignment of error in part, reverse the trial court's judgment in part, and remand the cause to the trial court to determine the appropriate rate of interest by hearing evidence on what a reasonable return on investment would have been for the four years in question.

Judgment affirmed in part
and reversed in part,
and cause remanded.

CUNNINGHAM, P.J., and WINKLER, J., concur.

---

12. *Kettering v. Johnson* (1962), 116 Ohio App. 302, 304, 22 O.O.2d 127, 187 N.E.2d 612; *Sys. Data, Inc. v. Visi Trak Corp.* (M.C.1995), 72 Ohio Misc.2d 8, 10, 655 N.E.2d 287.

13. See *Koegel v. Koegel* (1982), 69 Ohio St.2d 355, 23 O.O.3d 320, 432 N.E.2d 206, syllabus; *Weaver v. Weaver*, 5th Dist. No. 2003CA00096, 2004-Ohio-4212, 2004 WL 1784595, ¶ 44; *Hingsbergen v. Kelley*, 12th Dist. Nos. CA2003–02–028 and CA2003–02–045, 2003-Ohio-5714, 2003 WL 22427807, ¶ 16.

14. Id. at ¶ 16–19; *Fisher v. Fisher* (Mar. 22, 2002) 3rd Dist. No. 7–01–12, 2002 WL 444904.

15. See *Williams v. Edwards* (1998), 129 Ohio App.3d 116, 127, 717 N.E.2d 368.

16. R.C. 1343.03(A); R.C. 5703.47.

RALPH WINKLER, J., retired, of the First District Court of Appeals, sitting by assignment.