[Cite as *Lanzilotta v. Lanzilotta*, 2013-Ohio-4050.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JENNIFER A. LANZILLOTTA, | : | APPEAL NOS. C-120796 |
| | | C-120835 |
| Plaintiff-Appellant/Cross-Appellee, | : | TRIAL NO. DR-1000288 |
| | : | *O P I N I O N.* |
| vs. | : | |
| JEFFREY A. LANZILLOTTA, | : | |
| Defendant-Appellee/Cross-Appellant. | : | |
| | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  September 20, 2013

*The Farrish Law Firm* and *Michaela M. Stagnaro*, for Plaintiff-Appellant/Cross-Appellee,

*Donovan Law* and *Michael P. McCafferty*, for Defendant-Appellee/Cross-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**S**YLVIA **S. H**ENDON**, Presiding Judge.**

{¶1}     Jennifer Lanzillotta and Jeffrey Lanzillotta have both appealed from the trial court's judgment entry granting their decree of divorce.  Because the trial court failed to consider Jennifer's overtime pay when determining her income for purposes of calculating child and spousal support, and because the court failed to consider the tax consequences of its property division award, we remand this cause for the trial court's reconsideration of these issues.  The judgment entry and decree of divorce issued by the trial court is otherwise affirmed.

### *Factual Background*

{¶2}     Jennifer and Jeffrey were married on July 6, 1996.  The termination date of their marriage was March 14, 2010.  Three children were born of the marriage.  The parties agreed on most parenting issues and submitted a shared parenting plan to the court, which was incorporated into its final entry and decree of divorce.  The parties also agreed on a myriad of property issues and submitted a joint property stipulation.  Various other property matters were tried before the court.  The trial court's final entry resolved the property issues, granted the parties a decree of divorce, and incorporated the parties' shared parenting plan.

### *Jennifer's Appeal*

### *A.  Property Distribution*

{¶3}     Jennifer argues in her first assignment of error that the trial court failed to equitably divide the parties' property.  A trial court has broad discretion in determining an equitable division of property in divorce proceedings, and will not be

reversed absent an abuse of discretion. *Kenning v. Gundrum*, 1st Dist. Hamilton No. C-060921, 2007-Ohio-4706, ¶ 5. An abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Pembaur v. Leis*, 1 Ohio St.3d 89, 91, 437 N.E.2d 1199 (1982).

{¶4} Jennifer first argues that the trial court incorrectly determined her interest in the parties' marital home. The parties had stipulated that Jeffrey was to retain the home following the divorce, but had not agreed upon Jennifer's equity interest in the home. In addition to the first mortgage on the home, the parties had obtained an equity line of credit. When determining Jennifer's equity interest, the trial court had subtracted both the first mortgage and the balance on the equity line of credit from the home's fair market value. The court then additionally subtracted Jeffrey's uncontested premarital interest in the home. The court divided the resulting value in half to determine each party's separate interest in the property. The trial court further ordered that Jennifer and Jeffrey were each responsible for half of the debt remaining on the equity line of credit. Jennifer argues that the trial court ordered her to pay twice for the equity line debt because her value in the home had already been reduced by the debt.

{¶5} We are not persuaded by Jennifer's argument. The trial court correctly determined the parties' equity in the home by subtracting both the first mortgage and the equity line debt from the home's fair market value. And because the equity line debt had been incurred on marital expenses, the trial court correctly ordered the parties to equally share responsibility for this debt. Jennifer's argument fails to recognize that the trial court's entry treats both parties equally with respect to the

equity line debt. Both parties' equity in the home was decreased by this debt, and both parties were ordered to shoulder the debt equally. We note that even if the trial court had not subtracted the balance of the equity line debt from the home's fair market value when determining the parties' equity interest, the overall equalization payment between the parties would remain the same because each party's equity interest would have increased by the same amount.

{¶6} Jennifer next argues that the trial court erred in its valuation of her engagement ring and by deeming the ring a marital asset. She contends that this issue was not properly before the trial court for review because the parties had submitted a property stipulation to the court that did not list the engagement ring as a disputed item. Jeffrey argues that because the ring had been purchased in part with funds from the equity line of credit, which the parties agreed was a disputed issue, valuation and division of the ring was properly before the trial court for its consideration. We are persuaded by Jeffrey's argument and find that issues concerning the engagement ring were properly before the trial court for review.

{¶7} Testimony provided at the property division hearing indicated that Jennifer's engagement ring had been either lost or stolen during the marriage. Jeffrey testified that the parties had received approximately $2,700 in insurance proceeds for the ring, and that they had paid an additional four to six thousand dollars for Jennifer to obtain a new ring. He indicated that he was not in favor of spending this additional money on the ring. Jeffrey further testified that the new ring had been appraised for $9,500. The trial court allowed his testimony but declined to admit the appraisal into evidence. Jennifer testified that she and Jeffrey had been in agreement that she should "upsize" her ring after the original was lost.

She testified that, including the insurance proceeds, they paid a total of four to five thousand dollars for the new ring. Jennifer indicated that the ring's appraisal had been inflated because the jeweler was a friend of the family.

{¶8} The trial court valued the ring at $9,500 and found it to be marital property. No abuse of discretion occurred in the trial court's valuation of the ring, which was supported by testimony in the record. Nor did the trial court abuse its discretion in considering the ring to be marital property. Generally, an engagement ring is considered a gift and is the separate property of the party who received it. *Derrit v. Derrit*, 163 Ohio App.3d 52, 2005-Ohio-4777, 836 N.E.2d 39, ¶ 48-49 (11th Dist.). But in this case, the original engagement ring was lost or stolen, and the parties replaced the ring by purchasing a new one with marital funds. The trial court believed Jeffrey's testimony that he had not desired to spend additional funds on the new ring and that he had not intended it to be a gift to Jennifer.

{¶9} Jennifer argues that, at the very least, she is entitled to receive as her separate property the $2,700 insurance proceeds received for the lost ring. The trial court considered this argument and determined that the insurance proceeds were likewise marital property because the insurance premiums had been paid with marital funds. We agree with the trial court's determination. *See Burkhart v. Burkhart*, 2013-Ohio-157, 986 N.E.2d 45, ¶ 20-21 (10th Dist.), affirming a lower court's decision that "proceeds from an insurance policy for which the premiums were paid from marital funds should be considered a marital asset."

{¶10} Jennifer last argues that the trial court erred in calculating the parties' equalization payment and in failing to consider the tax consequences associated with that payment. The trial court ordered Jeffrey to pay Jennifer a property equalization

payment of $36,694 from his 401(K) account. Jennifer argues that this payment should be increased based on her previous arguments concerning the equity line debt and the engagement ring. Based on our determination that these prior arguments were without merit, we hold that the trial court correctly determined the amount of the equalization payment.

{¶11} Jennifer next argues that the trial court failed to consider the tax consequences that she will incur when she withdraws the transferred funds as cash from her own 401(K) account. She is correct. R.C. 3105.171(F) contains a list of factors that the trial court shall consider when making a distributive award. One factor to be considered is "the tax consequences of the property division upon the respective awards to be made to each spouse." R.C. 3105.171(F)(6). Because the statute provides that the trial court "shall consider" the listed factors, trial courts are mandated to consider each factor. *See Thomas v. Thomas*, 171 Ohio App.3d 272, 2007-Ohio-2016, 870 N.E.2d 263, ¶ 6 (1st Dist.); *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 38. If the parties fail to present evidence on any of the factors provided in R.C. 3105.171(F), the trial court bears the burden of directing them to present such evidence. Here, the trial court erred in failing to consider the tax consequences associated with the ordered equalization payment.

{¶12} Jennifer's first assignment of error is sustained in part and overruled in part. On remand, the trial court must consider the tax consequences associated with a potential equalization payment before awarding the payment.

### B. Child-Support Deviation and Tax Exemptions

{¶13}  In her second assignment of error, Jennifer argues that the trial court erred in determining her child-support obligations and in allocating tax exemptions. We review the trial court's decision on both matters for an abuse of discretion. *France v. France*, 1st Dist. Hamilton Nos. C-100468 and C-100489, 2011-Ohio-3025, ¶ 13; *Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 67.

{¶14}  Jennifer first contends that the trial court erred in not awarding a greater child-support deviation.  An appropriate deviation cannot be determined until the amount of child-support has been calculated.  Because we are remanding this cause for a determination of Jennifer's child-support obligations utilizing an income that includes her overtime pay (which we discuss and hold in response to Jeffrey's first assignment of error), we find that this argument is moot.

{¶15}  Jennifer next argues that the trial court erred in allocating tax exemptions.  The magistrate had awarded Jennifer two children to claim for tax exemption purposes each year until the parties' oldest daughter became emancipated.  The trial court modified the magistrate's award, specifically holding that Jeffrey was entitled to claim two children for tax exemption purposes for the year 2011.  For each year following, the court held that the parties would alternate claiming two children.  Jennifer contends that the trial court's modification was in error because she will benefit more from the exemptions because she pays a majority of the children's expenses.

{¶16}  R.C. 3119.82 concerns the designation of a parent to claim a federal tax deduction. It provides that if the parents do not agree on which parent may claim the children, the court, when determining which party to grant the deduction, "shall

consider * * * any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." R.C. 3119.82.

{¶17} In this case, both parents were designated as residential parents. Although the oldest child resides solely with Jennifer, the younger children spend their time equally between parents. Accordingly, no error occurred in the trial court's determination that the parties' should alternate claiming two children. Nor did the trial court abuse its discretion in granting Jeffrey two children to claim as tax exemptions in the year 2011. Jennifer had claimed two children in the year 2010, and the court equitably determined that Jeffrey should be entitled to claim two children the following year. Jennifer's second assignment of error is overruled.

### Jeffrey's Cross-Appeal

### A. Calculation of Child Support and Spousal Support

{¶18} In his first assignment of error, Jeffrey argues that the trial court erred in calculating Jennifer's income for purposes of child support and allocation of expenses.

{¶19} The magistrate determined that Jennifer's income was $135,500. Jeffrey objected to this amount, arguing that the magistrate had failed to include Jennifer's overtime pay when calculating her income. With respect to overtime, Jennifer had testified that in the year 2011, the year in which she testified, she had received a substantial amount of overtime pay to date. Jennifer further testified that

she did not expect there to be much overtime available in the future because her employer had hired additional employees. When ruling on Jeffrey's objection to the calculation of Jennifer's income, the trial court determined that the magistrate had correctly found Jennifer's income to be $135,500. In so concluding, the court cited Jennifer's testimony that the overtime was unlikely to occur in the future.

{¶20} R.C. 3119.01(C) defines the term gross income for purposes of determining child support. It provides that gross income means "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses." *See* R.C. 3119.01(C)(7). This provision requires the trial court to consider a party's overtime pay when calculating the party's income. But Jennifer contends that the trial court properly calculated her income without including overtime pay because the overtime pay was nonrecurring income pursuant to R.C. 3119.01(C)(8).

{¶21} R.C. 3119.01(C)(7) lists various types of income and benefits that should not be included when calculating a party's gross income, including nonrecurring or unsustainable income. R.C. 3119.01(C)(7)(e). Nonrecurring income is defined in R.C. 3119.01(C)(8) as "an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." Jennifer asserts that because she is not likely to receive overtime pay in the future, it is nonrecurring income and should not be included in a calculation of her gross income.

{¶22} We are not persuaded. R.C. 3119.05(D) provides how to determine the actual amount of overtime earned by a parent when calculating that parent's gross income. It provides that the calculation should utilize the lesser of the following as

income from overtime pay: "[t]he yearly average of all overtime * * * received during the three years immediately prior to the time when the person's child support obligation is being computed" or "[t]he total overtime * * * received during the year immediately prior to the time when the person's child support obligation is being computed." R.C. 3119.05(D)(1) and (2). The child support computation worksheet tracks this language and provides for the inclusion of overtime pay as determined by these methods. Both the statute and worksheet mandate that any overtime earned in the three-year period prior to the calculation of child support be included in a party's gross income.

{¶23} Consequently, the trial court was required to include overtime pay when calculating Jennifer's gross income, and it abused its discretion in failing to do so. On remand, the trial court must recalculate Jennifer's child-support obligations and include her overtime pay as part of her gross income. The trial court must also determine the percentages that each parent is required to pay for the children's expenses utilizing an income for Jennifer that includes overtime pay. Jeffrey's first assignment of error is sustained.

{¶24} In his second assignment of error, Jeffrey argues that the trial court erred by failing to include Jennifer's overtime pay as part of her income when determining spousal support. The trial court possesses broad discretion in establishing an award of spousal support and will not be reversed absent an abuse of discretion. *Coors v. MacEachen*, 1st Dist. Hamilton No. C-100013, 2010-Ohio-4470, ¶ 13.

{¶25} R.C. 3105.18 provides that a trial court may award spousal support when it is "fair and reasonable," and it provides various factors to be considered

when determining whether an award of spousal support should be granted. *See* R.C. 3105.18(C)(1). One factor that the trial court is mandated to consider with respect to spousal support is "[t]he income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code." R.C. 3105.18(C)(1)(a). Unlike the statute applicable for the calculation of child support, R.C. 3105.18 does not specifically require the trial court to consider overtime pay or bonuses when determining a party's income. But the statute does direct the court to consider the party's income "from all sources." Here, the record is clear that Jennifer had earned a substantial amount of overtime pay in the year 2011. And Jennifer provided no evidence other than her testimony that the overtime was not likely to occur in the future. We hold that, in light of these circumstances, equity required the trial court to include Jennifer's overtime pay when calculating her income for spousal support purposes, and that the court abused its discretion by failing to do so. Jeffrey's second assignment of error is sustained.

### B. Property Division of Debt

{¶26} In his third assignment of error, Jeffrey argues that the trial court erred by failing to equitably divide the parties' property. He specifically argues that the trial court erred by ordering him to pay half of the parties' credit card debt and equity line debt, and half of the portion of Jennifer's student loans that had been used for marital expenses.

{¶27} With respect to the credit card and equity line debts, Jeffrey contends that Jennifer should be required to pay two thirds of these debts because they had increased during the time period that she had been in school. We are not persuaded.

11

The credit card and equity line debts were marital debts. No abuse of discretion occurred in the trial court's determination that these marital debts should be split equally.

{¶28} Jeffery next contends that Jennifer should be held solely responsible for the portion of her student loans that had been spent on household expenses. Again, we disagree. This portion of the loans had not been spent on Jennifer's education, but rather on marital expenses for the benefit of both parties. The trial court did not abuse its discretion in ordering the parties to be held equally responsible for this debt. *See Lassiter v. Lassiter*, 1st Dist. Hamilton No. C-010309, 2002-Ohio-3136, ¶ 22. Jeffrey's third assignment of error is overruled.

### *Conclusion*

{¶29} This cause is remanded for the trial court to recalculate child-support and spousal-support obligations utilizing an income for Jennifer that includes overtime pay. On remand, the trial court must also consider the potential tax consequences of the ordered property equalization payment. The judgment of the trial court is otherwise affirmed.

Judgment affirmed in part, reversed in part, and cause remanded.

CUNNINGHAM and FISCHER, JJ., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.