**SANDORF, Appellant,**

v.

**SANDORF, Appellee.**

[Cite as *Sandorf v. Sandorf*, 190 Ohio App.3d 355, 2010-Ohio-5326.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 25302.

Decided Nov. 3, 2010.

356

Jack W. Abel, for appellant.

Per Curiam.

## INTRODUCTION

{¶ 1} Douglas and Molly Sandorf married in 1989 and divorced in 2004. They have two children. At the time of their divorce, the Sandorfs entered into a shared-parenting plan. The plan named both of them as a residential parent for both children and split their parenting time almost equally. Mr. Sandorf agreed to pay Ms. Sandorf $161.50 per month in child support and to provide health insurance for the children. In 2009, Ms. Sandorf asked the Summit County Child Support Enforcement Agency to review the child-support award. When the agency determined that Mr. Sandorf's support payment should be increased to $865.31 per month, Mr. Sandorf requested that the common pleas court review its calculation. The court determined that Mr. Sandorf should pay $686.80 per month if he provided health insurance to the children and $701.42 if he did not. Mr. Sandorf has appealed, arguing that the trial court used the incorrect worksheet to compute the child-support amount, that there has been no change of circumstances to justify a modification, and that the court failed to consider whether a deviation from the worksheet amount was appropriate. We affirm because the trial court used the correct worksheet, the difference between the existing child-support award and the recommended award was significant enough to permit a modification, and the trial court exercised proper discretion when it refused to deviate from the basic child-support schedule because it was permitting Mr. Sandorf to claim the children for tax purposes.

## CHANGE OF CIRCUMSTANCES

{¶ 2} Mr. Sandorf's third assignment of error is that the trial court incorrectly modified the child-support award. He has argued that absent a change in circumstances, the court was required to abide by the shared-parenting plan and the original method of calculating child support.

{¶ 3} There are two ways that a child-support order can be modified under the Ohio Revised Code. One way is for one of the parties to ask the trial court to modify the order under R.C. 3119.79. If this method is pursued, the trial court may modify the order only if there has been a "substantial change of circumstances." R.C. 3119.79(C). The other way a support award can be modified is through the child-support enforcement agency. See R.C. 3119.60, 3119.61, and 3119.76. Under Ohio Adm.Code 5101:12–60–05.1(D), a parent has the right, once every three years, to ask the agency to review the support order. An adjustment is appropriate if the recommended amount calculated by the child-support-enforcement agency is 10 percent more or less than the existing obligation. Ohio Adm.Code 5101:12–60–05(D)(1). To calculate the recommended amount of child support, the agency uses the schedules in R.C. 3119.01 to 3119.05. Ohio Adm.Code 5101:12–45–10(A) and 5101:12–60–05.4(A).

{¶ 4} As mentioned above, in 2009, Ms. Sandorf asked the Summit County Child Support Enforcement Agency to review the child-support award. The agency determined that the recommended amount of support was 10 percent more than the existing obligation. Accordingly, it correctly determined that an adjustment was appropriate. Mr. Sandorf's third assignment of error is overruled.

## CHOICE OF WORKSHEET

■■ {¶ 5} Mr. Sandorf's first assignment of error is that the trial court incorrectly used the shared-parenting worksheet under R.C. 3119.022 instead of the split-parenting worksheet under R.C. 3119.023 to calculate the appropriate amount of support. He has argued that because both parents were designated as the children's residential parent and their parenting time is nearly equal, they have split parental rights under R.C. 3119.01(C)(14).

{¶ 6} At the time of the Sandorfs' divorce, the trial court adopted their proposed shared-parenting plan and made it the order of the court. If a court issues a shared-parenting order, it "shall order an amount of child support * * * that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022." R.C. 3119.24(A)(1). The Ohio Supreme Court has held that that language is mandatory. *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 388, 686 N.E.2d 1108 (applying identical language under prior statute). The worksheet identified in R.C. 3119.022 is the shared-parenting worksheet.

{¶ 7} When the Sandorfs divorced, the trial court did not use the shared-parenting worksheet under R.C. 3119.022 to calculate the appropriate child-support award. Instead, it used the split-parenting worksheet under R.C. 3119.02.3. The parties did not appeal the court's use of the incorrect worksheet.

Mr. Sandorf has argued that the court's use of the split-parenting worksheet, therefore, is res judicata.

{¶ 8} The Sandorfs did not have the right to choose which worksheet the trial court used to calculate child support. Although the Ohio Supreme Court has recognized that "[t]he law favors settlements," "the difficult issue of child support may result in agreements that are suspect. In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures. The compromises may be in the best interests of the parents but not of the child. Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support." *DePalmo v. DePalmo* (1997), 78 Ohio St.3d 535, 540, 679 N.E.2d 266. R.C. Chapter 3119 is "aimed at providing uniform, consistent and fair support obligations to protect Ohio's children from insufficient and inequitable child support orders. It is the duty of * * * the * * * courts of this state to adhere to the dictates of the General Assembly and to strictly comply with the provisions of the statute." *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 143, 601 N.E.2d 496. "The trial court * * * has the obligation to test any proposal of the parents to see if it meets the Child Support Guidelines * * * even if the parties agree between themselves to a different amount or agree that only one party shall assume all support." *DePalmo* at 540.

{¶ 9} "Res judicata is a rule of fundamental and substantial justice * * * that 'is to be applied in particular situations as fairness and justice require, and that * * * is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.'" *State v. Simpkins,* 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, at ¶ 25, quoting *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 386–387, 653 N.E.2d 226. Because the trial court would have violated its duty to serve as the children's watchdog in support matters if it had again used the split-parenting worksheet, we conclude that it correctly declined to apply the doctrine of res judicata to the choice of worksheet issue.

{¶ 10} Mr. Sandorf has argued that regardless of the original child-support calculation, the trial court should have used the split-parenting worksheet when recalculating his child-support obligation because he and Ms. Sandorf have split parental rights and responsibilities. The split-parenting worksheet is appropriate if "the parents have split parental rights and responsibilities with respect to the children who are the subject of the child support order." R.C. 3119.023. Under R.C. 3119.01(C)(14), "'[s]plit parental rights and responsibilities' means a situation in which there is more than one child who is the subject of an allocation of parental rights and responsibilities and each parent is the residential parent and legal custodian of at least one of those children."

{¶ 11} Mr. Sandorf has argued that his situation satisfies the definition of split parental rights and responsibilities because he and Ms. Sandorf are both residential parents of both children of the marriage. This court, however, has interpreted the definition of split parental rights and responsibilities to apply only to situations in which "each parent is the residential parent, and the only residential parent, of at least one child." *Paluch v. Paluch* (June 3, 1998), 9th Dist. No. 18515, 1998 WL 289676, at *2; see *Gillum v. Malishenko* (July 19, 1996), 2d Dist. No. 95CA114, 1996 WL 402338, at *5 (describing split custody as situation in which "each parent has sole custody of one or more of the parties' children").

{¶ 12} In *Pauly v. Pauly,* 80 Ohio St.3d at 388, 686 N.E.2d 1108, the Ohio Supreme Court discussed the difference between split parenting and shared parenting. It pointed to *Beckley v. Beckley* (1993), 90 Ohio App.3d 202, 628 N.E.2d 135, as containing an example of split parenting. In *Beckley,* the mother was given custody of two children and the father was given custody of the third child. The facts of *Beckley* match this court's definition of split parental rights and responsibilities.

{¶ 13} In this case, neither parent is the sole residential parent of either child. Accordingly, because the Sandorfs agreed to a shared-parenting plan and do not have split parental rights and responsibilities, we conclude that the trial court correctly used the shared-parenting worksheet to calculate child support. The first assignment of error is overruled.

## TWO WORKSHEETS

{¶ 14} Mr. Sandorf's second assignment of error is that because both parents are residential parents of the children, the trial court should have done two child-support worksheets and then compared them to determine the amount of his support obligation. He has argued that that is the only alternative that reconciles the plain language of R.C. 3119.07(A) with legislative intent.

{¶ 15} Under R.C. 3119.07(A), "[e]xcept when the parents have split parental rights and responsibilities, a parent's child support obligation for a child for whom the parent is the residential parent and legal custodian shall be presumed to be spent on that child and shall not become part of a child support order." Mr. Sandorf has noted that if that language is given its plain meaning, the court should have presumed that he would spend his child-support obligation on the children and that Ms. Sandorf would also spend her child-support obligation on the children and therefore should have determined that neither party should pay any support to the other. He has argued that because that could not be what the legislature intended, considering the discrepancy in their incomes, the better choice would have been for the trial court to complete two child-support work-

sheets, one designating him as the obligor and one designating Ms. Sandorf as the obligor, and then offset the results.

{¶ 16} Although not apparent from the language of the statute, Mr. Sandorf's argument fails because R.C. 3119.07(A) does not apply to shared-parenting arrangements. *Pauly*, 80 Ohio St.3d at 388–389, 686 N.E.2d 1108. Before 2001, R.C. 3119.07 was codified at R.C. 3113.21.5(C). In *Pauly*, the Ohio Supreme Court determined that R.C. 3113.21.5(C) does not apply if "both parents are considered residential parents at all times." Id. at 389. It concluded, instead, that R.C. 3113.215(B)(6), which is now codified as R.C. 3119.24, provides the correct method for calculating child-support obligations under a shared-parenting order. Under R.C. 3119.24(A)(1), "[a] court that issues a shared parenting order * * * shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount." The trial court, therefore, correctly did not apply R.C. 3119.07(A) to its child-support calculation. Mr. Sandorf's second assignment of error is overruled.

## CHILD–SUPPORT DEVIATION

{¶ 17} Mr. Sandorf's fourth assignment of error is that the trial court failed to consider the deviation factors under R.C. 3119.23 or make findings as to those factors. He has argued that besides a statement that the parties have almost equal possession of the children, there is no indication in its journal entry that it considered whether to deviate from the child-support worksheet.

{¶ 18} As noted in the previous section, to calculate the child-support award under R.C. 3119.24(A)(1), the trial court had to complete the worksheet "set forth in section 3119.022 * * * through the line establishing the actual annual obligation," then determine whether a deviation was appropriate because "that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child[ren]," taking into consideration any extraordinary circumstances of the parents and the factors set forth in R.C. 3119.23. Under R.C. 3119.24(B), "extraordinary circumstances of the parents" include "(1) [t]he amount of time the children spend with each parent; (2) [t]he ability of each parent to maintain adequate housing for the children; (3) [e]ach parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant; (4) [a]ny

other circumstances the court considers relevant." The factors identified in R.C. 3119.23 include "(A) [s]pecial and unusual needs of the children; (B) [e]xtraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination; (C) [o]ther court-ordered payments; (D) [e]xtended parenting time or extraordinary costs associated with parenting time * * *; (E) [t]he obligor obtaining additional employment after a child support order is issued in order to support a second family; (F) [t]he financial resources and the earning ability of the child; (G) [d]isparity in income between parties or households; (H) [b]enefits that either parent receives from remarriage or sharing living expenses with another person; (I) [t]he amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents; (J) [s]ignificant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing; (K) [t]he relative financial resources, other assets and resources, and needs of each parent; (L) [t]he standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married; (M) [t]he physical and emotional condition and needs of the child; (N) [t]he need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen; (O) [t]he responsibility of each parent for the support of others; [and] (P) [a]ny other relevant factor."

{¶ 19} Mr. Sandorf has not identified the factors relevant to the parties' circumstances that the trial court incorrectly failed to consider in determining whether to deviate from the child-support worksheet. He, presumably, believes the court should have placed greater weight on the fact that the parties have almost equal parenting time. We note that although the trial court did not deviate from the child-support worksheet, it determined that "[b]ecause of the almost equal time-sharing, [Mr. Sandorf] should be able to claim the children as dependents for income tax purposes * * *. Then the parties' disposable cash is approximately equal after the payment for health care insurance [and Mr. Sandorf's child-support payment]. It is also true that the parties' total disposable cash is thereby maximized."

{¶ 20} The record contains a copy of a worksheet calculating the parties' total cash and their individual "cash to meet living expenses" under alternative scenarios depending on whether Mr. Sandorf claims one, both, or neither of the children for tax purposes. Under the original separation agreement, Ms. Sandorf was able to claim one of the children. Mr. Sandorf has not demonstrated that it was inequitable for the court to mitigate the increase in his child-support

obligation through tax relief. Accordingly, because the court took the parties' almost equal parenting time and relevant tax consequences into consideration, we conclude that it exercised proper discretion when it determined how to modify the support order. Mr. Sandorf's fourth assignment of error is overruled.

## CONCLUSION

{¶ 21} The trial court used the correct child-support worksheet, correctly concluded that a modification of child support was permissible, and exercised proper discretion when it modified the support order. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

DICKINSON, P.J., and MOORE, J., concur.

WHITMORE, J., dissents.

WHITMORE, Judge, dissenting.

{¶ 22} I dissent because I would reverse the trial court's decision to disregard the uncontested terms of the parties' separation agreement and to calculate the father's child support in a manner contrary to the desire of both parties. As part of their settlement agreement, the father and the mother agreed to calculate child support by using the worksheet for split parental rights. Neither party contested the use of that worksheet on direct appeal, nor did the mother challenge the calculation employed for determining child support during the Child Support Enforcement Agency's ("CSEA") administrative review. The mother's only request to CSEA was that the father's support obligation be modified to reflect the parties' recent agreement that she would provide the children's health insurance through her employer, because the father had been temporarily unemployed and, upon becoming reemployed elsewhere, was facing higher costs to insure the children through his new employer. To her credit, the mother also informed CSEA that aside from upcoming summer-camp expenses, there were no longer any childcare expenses for their youngest child, which arguably would have reduced the father's support obligation. Instead of honoring the calculation agreed to by the parties and recalculating support using the worksheet for split parental rights based on the provisions of the parties' separation agreement, the trial court calculated child support using the worksheet for shared parenting, which resulted in more than a four-fold increase in the father's support obligation.

{¶ 23} This court has previously stated that "[t]he parties' separation agreement, incorporated as part of the divorce decree, is a contract between the parties. Therefore, the separation agreement is subject to the same rules of

construction, which govern other contracts." *Ivanov v. Ivanov,* 9th Dist. No. 24998, 2010-Ohio-1963, 2010 WL 1780142, at ¶ 19. Here, the parties' separation agreement incorporates their shared-parenting plan, which calculated the father's child-support obligation in accordance with the worksheet for split parental rights. Though the parties should have arguably employed the worksheet for shared parenting to calculate the father's support obligation, they chose instead to use the worksheet for split parental rights, seemingly based on their desire to "split" their parenting time and responsibilities equally between one another. To the extent that the trial court erred in the first instance by permitting the parties to use a worksheet for split parental rights instead of ordering the parties to calculate support based on the worksheet for shared parental rights, that error is not properly before this court as the subject of this appeal.

{¶ 24} When a trial court has erroneously adopted the parties' agreement with respect to child support, this court has noted that "[a]ny error in the trial court's adoption of the agreed entry [calculating child support] has been waived [if] neither party timely appealed that order." *Smith v. Collins* (1995), 107 Ohio App.3d 100, 104, 667 N.E.2d 1236 (noting that "[i]t [wa]s clear that the trial court failed to follow [the Supreme Court's] mandate [relative to deviations from the child-support worksheets] in adopting the parties' agreed journal entry," but concluding that "[because] neither party timely appealed the agreed entry, that entry must be accepted as the existing child support order of the court"). See also *Jindra v. Jindra,* 9th Dist. No. 04CA0011–M, 2004-Ohio-6742, 2004 WL 2895789, at ¶ 6 (declining to address the trial court's failure to adhere to the child-support statute in the parties' original separation agreement when neither party had appealed from that judgment).

{¶ 25} More recently, the Eleventh District considered similar circumstances when the trial court had "no doubt * * * erred in its original decree of dissolution" by failing to fully complete a child-support worksheet or document factors to support a significant deviation in husband's child-support obligation as agreed to under the terms of the parties' separation agreement. *In re Marriage of Henson,* 11th Dist. No. 2006–T–0065, 2007-Ohio-4376, 2007 WL 2410356, at ¶ 24, 29–33. When the trial court later granted husband's motion to modify his support obligation, the Eleventh District reversed, concluding:

> Although flawed and erroneous, the original decree of dissolution is not void ab initio, as [the father] contends, but rather, merely voidable. Thus, as a voidable judgment, the original order may not be collaterally attacked, but instead may be addressed only on direct appeal. Since it was not, this erroneous order must be taken as presumably correct.
>
> * * *

Since the original decree is merely voidable and because [the father] did not directly appeal that order, which adopted the separation agreement that he voluntarily entered into, any error in the order cannot now be cured via a motion to modify. * * * [W]e cannot now revisit the past on a motion to modify * * * by curing the trial court's initial failure to follow [statutory] requirements * * *. The trial court's initial error is quite simply not properly before the court.

Id.

{¶ 26} As noted, neither party appealed from the trial court's order establishing the father's support based on the use of a worksheet for split parental rights. Even if the parties were not precluded from raising this issue, this court cannot sua sponte address the propriety of the child-support worksheet used in this instance, when neither party has challenged its use. See *Sahr v. Sahr,* 5th Dist. No. 09 CA 3, 2009-Ohio-4055, 2009 WL 2469544, at ¶ 19, fn. 2. Moreover, I consider the situation here, when the parties agreed to use the worksheet for split parental rights, no different than when parties agree to a deviation from the calculated amount of support. *Jindra,* 2004-Ohio-6742, 2004 WL 2895789, at ¶ 8 (enforcing the parties' agreement to apply a 29 percent downward deviation to the amount of support calculated by the child-support guidelines).

{¶ 27} For the foregoing reasons, I would reverse the trial court's judgment because it abused its discretion in using the worksheet for shared parenting to calculate a modification to the father's child-support obligation, in contradiction to the unambiguous agreement of the parties to calculate support using the worksheet for split parental rights. Therefore, I dissent.