[Cite as *France v. France*, 2011-Ohio-3025.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CATHERINE S. FRANCE, | : | APPEAL NOS. C-100468 |
| | | C-100489 |
| Plaintiff-Appellant/Cross-Appellee, | : | TRIAL NO. DR-0000763 |
| vs. | : | *D E C I S I O N.* |
| WILLIAM M. FRANCE, JR., | : | |
| Defendant-Appellee/Cross-Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed as Modified in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: June 22, 2011

*Wolinetz Law Offices, LLC*, *Barry H. Wolinetz*, *Amanda C. Baker*, and *Kelly M. Gwin*, for Plaintiff-Appellant/Cross-Appellee,

*Barbara J. Howard Co., L.P.A.*, and *Barbara J. Howard*, for Defendant-Appellee/Cross-Appellant.

Please note: This case has been removed from the accelerated calendar.

**HILDEBRANDT, Judge.**

{¶1} By judgment entry dated June 16, 2010, the trial court terminated the child-support obligation of defendant-appellee/cross-appellant William M. France, Jr., ("the Father"). The termination of the child-support obligation was retroactive to March 17, 2010. In the appeal numbered C-1000468, plaintiff-appellant/cross-appellee Catherine S. France ("the Mother") appeals the trial court's judgment terminating the Father's child-support obligation. The Father, in the cross-appeal numbered C-1000489, appeals the trial court's judgment establishing the effective date for termination of the child-support obligation. For the following reasons, we affirm the judgment in part as modified in this decision, reverse it in part, and remand this case for further proceedings.

{¶2} The Mother and the Father were divorced in May 2000. They had five children born during the marriage. (One child was emancipated in May 2010.) At the time of the divorce, the parties had entered into a shared-parenting plan, agreeing to share parental rights and responsibilities for all five children, who were then minors. Because the shared-parenting plan was unsuccessful, the parties then entered into an agreed entry, journalized by the court in October 2005 ("the 2005 Agreed Entry"), terminating the shared-parenting plan and naming the Father as the sole residential parent and legal custodian of all five children; however, each party retained equal parenting time. As part of the 2005 Agreed Entry, the Father was to pay monthly child support to the Mother, effective November 1, 2005, in the amount of $800 per child for a total of $4000 per month. Additionally, the Father agreed to provide the children's health insurance and to pay for all of the children's uninsured and unreimbursed medical expenses, as well as for all of the children's primary

clothing, including school uniforms, reasonable nonschool wardrobes, shoes, and coats.

{¶3} On December 31, 2008, the Father filed a motion that, among other things, sought to terminate or substantially reduce his child-support obligation under the 2005 Agreed Entry because, he asserted, his financial situation had worsened between 2005 and 2008, and because he believed that these three years were ample time for the Mother to gain employment. The Father requested a hearing, and the motion was originally scheduled to be heard February 19, 2009. The hearing was continued to March 20, 2009, and at that time issues from the Father's motion other than child support were addressed by the court. Over the next several months, the trial court did not hold any hearings while the Mother attempted to disqualify the judge presiding over their case. Eventually, the trial judge voluntarily recused himself, and the case was reassigned to a different judge in August 2009.

{¶4} By August 2009, there were several contempt motions against the Mother that needed to be addressed in addition to the Father's motion to terminate child-support. The contempt motions were heard first, and this caused a delay in the Father's motion being heard. In September 2009, the Father moved to compel the Mother to answer discovery that he had served upon her in March 2009. Although this motion to compel was scheduled for a hearing, the Mother began disqualification proceedings against the new judge assigned to the parties' case and thus the hearing date was vacated. Eventually, the Supreme Court of Ohio issued a decision denying the Mother's request to disqualify the judge.

{¶5} Subsequently, in March 2010, the trial court considered the Father's motion to compel and ordered that the Mother answer the discovery by "March 30,

2010 for all periods from and after December 31, 2008," the date when the Father had filed his motion to terminate or modify his child-support obligation. The Father then filed an amended motion to terminate or modify child support on March 17, 2010. The Father did so because he wanted the trial court to take into account his current financial situation as well as his finances in October 2005, when child support was ordered, and in December 2008, when he first requested that child support be terminated or modified.

{¶6}    Eventually the Mother responded to the discovery, but because her responses were substantially incomplete, the trial court ordered her to resolve "all the deficiencies in discovery" by May 1, 2010, or she would be precluded from offering any evidence, "either documentary or via testimony." More specifically, the court ordered that the Mother would be precluded from offering bank statements, employment applications, and credit-card expenditures, as well as any evidence related to her monthly expenses that she had incurred but could not pay for the relevant period, and any expenditure on behalf of the children as to specific monetary amounts. The court then stated that the "Mother is specifically cautioned that if she is precluded from offering the evidence stated above, and the Court finds the evidence offered by Father to be credible, the Court may adopt Father's evidence as true and accurate and base his continuing child support obligations on that evidence alone." Following this court order, the mother did not submit any additional responses to the Father's discovery requests.

{¶7}    On May 13, 2010, a hearing on the Father's motion to terminate child support was finally held. The Father called the Mother as a witness. She testified as if on cross-examination that she had not told a parenting investigator that she had earned $25,000 in 2005 and another $6000 from odd jobs. She admitted that she

4

had worked for the Market Tavern in 2005, but could not remember her salary. She has trained dogs and horses for over 20 years.

{¶8} The Father testified that he had paid $68,000 in child support to the Mother since January 1, 2009. He testified that, as part of the divorce property settlement, he had given the Mother over $450,000, which was more than the purchase price of her home. Therefore, he speculated that the reason why she then had a mortgage was because she had used that money for items other than housing. He testified that he had paid the children's school tuition for six years, but that his mother has since taken over that expense. He further testified that he paid for the children's nontuition school expenses, such as fees for sports teams, and that he paid for health insurance in addition to all healthcare-related costs not covered by insurance. Additionally, he also paid for the children's clothing, recreational athletic gear, and summer camps, as well as fuel and maintenance for his son's car. He gave the children an allowance and/or spending money and was planning to purchase a car for his twin daughters.

{¶9} The Mother testified that she was unemployed, although she did state in response to one of the Father's interrogatories that she had earned money doing odd jobs for people. She indicated that the last time she had paid her mortgage was two months earlier, and that she paid for six cellular phones for her children and herself. She also said that she paid for haircuts and dry cleaning for the children as well as auto insurance. She also admitted into evidence a list of her debts.

{¶10} After the matter was submitted to the trial court, the court issued an order terminating child support effective May 31, 2010, until further order of the court. Eventually, the trial court entered a judgment terminating the Father's child-

support obligation effective March 17, 2010, the date he had filed his amended motion. These appeals followed.

{¶11} In the Mother's appeal, she brings forth two assignments of error. In her first assignment of error, the Mother asserts that the trial court erred as a matter of law and abused its discretion in terminating the Father's child-support obligation. We are unpersuaded.

{¶12} Under this assignment of error, the Mother raises five different arguments, which we address in turn.

{¶13} It is well established that a trial court's decision regarding child-support obligations is a matter of discretion and will not be disturbed absent a showing of an abuse of discretion.[1] An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.[2]

{¶14} The trial court primarily relied on R.C. 3119.07(A) to terminate the Father's child-support obligation. Therefore, the Mother first argues that the trial court wrongly interpreted and applied this statute to the facts of this case. We are unpersuaded.

{¶15} R.C. 3119.07(A) provides in part that "[e]xcept when the parents have split parental rights and responsibilities, a parent's child-support obligation for a child for whom the parent is the residential parent and legal custodian shall be presumed to be spent on that child and **shall not** become part of a child support order * * *." (Emphasis added.)

---

[1] *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028.
[2] *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶16}    Under a plain reading of R.C. 3119.07(A), there is a clear presumption that the legal custodian and residential parent's child-support obligation is spent on that child and does not become part of a child-support order where the parties do not have split parental rights and responsibilities.[3]    Additionally, we note that R.C. 3119.07(A) also does not apply to shared-parenting arrangements, where both parties are normally considered residential parents unless the court orders otherwise.[4]    In fact, this court has previously held that the presumption contained in R.C. 3119.07(A) only applies to situations in which one parent is a residential parent and one is a nonresidential parent.[5]

{¶17}    Here, there is no dispute that the Father was the sole legal custodian and residential parent of the parties' five minor children, and that the parties did not have split parental rights and responsibilities[6] or a shared-parenting plan.  Thus, under R.C. 3119.07(A), the trial court was required to presume that the Father's child-support obligation was spent on his children as part of his daily spending, and thus, the court did not have the authority in this case to order the Father to pay child support to the Mother.  Instead, the Mother should have been considered the obligor,

---

[3] See *Lassiter v. Lassiter*, 1st Dist. No. C-010309, 2002-Ohio-3136, ¶4 (holding that former R.C. 3113.215(C) [now R.C. 3119.07] sets forth a presumption that the residential parent's child-support obligation is spent on that child and does not become part of a child-support order).

[4] *Pauly v. Pauly*, 80 Ohio St.3d 386, 388, 1997-Ohio-105, 686 N.E.2d 1108 (holding that former R.C. 3113.215(C) [now R.C. 3119.07(A)] does not apply to shared-parenting arrangements because under shared-parenting both parents are considered residential parents at all times; instead former R.C. 3113.215(B)(6)(a) [now R.C. 3119.24] is the appropriate provision to determine child support under a shared-parenting plan); *Sandorf v. Sandorf*, 190 Ohio App.3d 355, 361, 2010-Ohio-5326, 941 N.E.2d 1248, ¶16 (holding that R.C. 3119.07(A) does not apply to shared-parenting plans); *Weinberger v. Weinberger* (May 15, 1998), 1st Dist. No. C-970552 (following *Pauly*, supra, and holding that the presumption in former R.C. 3115.215(C) [now R.C. 3119.07(A)] that the residential parent's child-support obligation is not included in a child-support order does not apply to shared-parenting orders where each parent is a residential parent).  But, see, *Lindman v. Lindman*, 5th Dist. No. 04CAF09065, 2005-Ohio-4708, ¶ 26-30, (holding that where the parties specifically agree or the court orders that there will only be one named residential parent in the shared-parenting plan, then R.C. 3119.07(A) applies).

[5] *Weinberger*, supra.

[6] See R.C. 3119.01(C)(14).

as she was the nonresidential parent.[7] Under these circumstances, we hold that the portion of the 2005 Agreed Entry ordering the Father to pay child support was void ab initio under R.C. 3119.07(A), and, therefore, that the trial court did not err in terminating the Father's child-support obligation.

{¶18} The Mother argues that despite the fact that the Father was considered the sole residential parent and legal custodian, the trial court did have the authority to order the Father to pay child support because the parties shared essentially equal parenting time, and because such an order would have been in the children's best interests. To support her argument, the Mother cites *Warren v. Warren*,[8] *Prusia v. Prusia,*[9] and *Kanel v. Kanel*.[10] But we do not find these cases persuasive. Although each case states that if a court orders equal parenting time, then the sole residential and custodial parent may be ordered to pay child support where the court determines that it is in the children's best interests, none of them analyze, apply, or even cite R.C. 3119.07(A).

{¶19} Next, the mother cites *Frey v. Frey*[11] in support of her argument. In *Frey*, the Third Appellate District held that a trial court may order a residential parent to pay child support to the nonresidential parent if the parents spend an equal amount of time with the children and if the trial court determines that such an order is in the best interest of the children. In explaining its holding, the *Frey* court, citing R.C. 3119.07(A), stated that "[s]uch an approach not only leaves intact the well-established presumption that the residential parent in a typical sole residential

---

[7] See *Lindman,* supra, at ¶32 (holding that, under R.C. 3119.07(A), even though there was a disparity of income between the parties, the mother should have been listed as the obligor for purposes of child support because the father was the sole residential parent and legal custodian).
[8] 10th Dist. No. 09AP-101, 2009-Ohio-6567.
[9] 6th Dist. No. L-02-1165, 2003-Ohio-2000.
[10] (Oct. 19, 1989), 8th Dist. No. 56013.
[11] 3rd Dist. No. 5-06-36, 2007-Ohio-2991.

parent arrangement expends his or her portion of the annual support obligation sum [directly on the children] * * * but also allows the trial court to fashion an order that is in the best interest of the children for those situations where the parenting schedule does not reflect the typical sole residential parent arrangement."[12] Essentially, the *Frey* court was acknowledging, without directly saying so, that R.C. 3119.07(A) contains a **rebuttable** presumption that the residential parent's support obligation is naturally spent on the children and therefore does not need to become part of a child-support order. Thus, under *Frey*, if the nonresidential parent is seeking child support, that parent can be awarded child support if he or she demonstrates that the parties share equal parenting time and that it would be in the best interest of the children to order the sole residential parent to pay child support.

{¶20} But even if we construe the presumption in R.C. 3119.07(A) as rebuttable, the Mother did not present any evidence in this case to rebut the statutory presumption that the Father's child-support obligation was being spent on the children or to show that it was in the best interest of the children to order the Father to pay child support. In fact, the evidence showed otherwise. The Father covered almost all of the children's expenses, except for food when they stayed at the Mother's house. Further, there was no persuasive evidence presented to demonstrate that the Mother could not pay for the food while the children were at her home, nor was there any persuasive evidence concerning the Mother's expenses as related to the children during her parenting time.

{¶21} In her second argument under this assignment of error, the Mother maintains that the trial court abused its discretion by terminating the Father's child-support obligation when the Father had voluntarily agreed to pay child support in

---

[12] Id. at ¶32.

the 2005 Agreed Entry. The Mother contends that parties can enter into a voluntary agreement whereby one party agrees to do something that he is not required to do by law. For example, parties can enter into an agreement whereby the parent who is the obligor under a child-support order may agree to pay the college tuition of the parties' child even though the parent's obligation to pay child support ends when the child reaches 18 years of age or graduates from high school. We agree that parties can voluntarily enter into agreements regarding their children such as the one in the foregoing example. But parties cannot agree to do something that is prohibited by the law and then expect the trial court to adopt their agreement as its own entry. Here, there is a statute, R.C. 3119.07(A), which specifically prohibits a court from making a sole residential parent's child-support obligation part of a child-support order. Therefore, even though the Father agreed in the 2005 Agreed Entry to pay child support, that portion of the agreement should not have been adopted by the trial court, as it was prohibited by law.

{¶22} In her third argument, the Mother asserts that the trial court abused its discretion in terminating the Father's child-support obligation when it failed to complete a child-support worksheet. Normally, a child-support worksheet is required whenever child support is ordered or has been modified;[13] however, in this case, the trial court was terminating child support that had been improperly ordered and was thus correcting a mistake. Because there was no traditional "modification" of child support here, we hold that a child-support worksheet was unnecessary under the facts of this case. Therefore, we cannot say that the trial court abused its discretion by not completing one. Because of this holding, we hold that the Mother's fourth argument, that the trial court abused its discretion by terminating the Father's

---

[13] See *Sapinsley v. Sapinsley*, 1st Dist. No. C-050092, 2005-Ohio-6773.

10

child-support obligation without properly "deviating" on the child-support worksheet, is moot.

{¶23}   Finally, in her fifth argument, the Mother asserts that the trial court abused its discretion when it terminated the Father's child-support obligation contrary to the limitations set forth in the parties' 2005 Agreed Entry.  Specifically, the Mother notes that the 2005 Agreed Entry required a review of the child-support obligation within six months of October 2005 before there could be any modification of the child-support order.  She asserts that this was a condition precedent to any change in the child-support order.  But the Mother has misread the agreement.  The 2005 Agreed Entry states that the child-support order is "subject to review by the Honorable Ronald A. Panioto in six (6) months, i.e., on or after April 30, 2006." This only meant that the child-support order could not be changed before April 30, 2006.  Even if the child-support order in the 2005 Agreed Entry was not void ab initio, we conclude that the Father abided by the agreement because he did not seek to terminate the child-support order until December 31, 2008.

{¶24}   Based on the foregoing, we hold that the trial court did not abuse its discretion in terminating the Father's child-support obligation set forth in the 2005 Agreed Entry.  The first assignment of error is overruled.

{¶25}   In her second assignment of error, the Mother contends that the court erred by finding that it was not in the best interest of the children to award the Mother child support.

{¶26}   Although the trial court did conclude that R.C. 3119.07 prohibited it from making the Father's child-support obligation part of a child-support order, the court did consider whether it would be in the best interest of the children to order the Father to pay child support.

{¶27} In considering the best interest of the children, the court noted that it was unable to conduct a full analysis because the Mother had failed to respond to the discovery requested by the Father, and thus that the evidence she had presented at the hearing was limited. The Mother was unable to offer any information about her income, her attempts to find employment since 2008, and her personal expenses as they related both to the children and to her own uses. Therefore, based on the evidence in the record before us, we cannot say that the trial court abused its discretion in determining that it was not in the best interest of the children to award the Mother child support. According to the evidence presented, the Father met all of the children's needs, and the Mother did not demonstrate that she could not meet the children's needs while they were staying at her home.

{¶28} At oral argument on appeal, the Mother argued that the trial court's discovery sanction, which prohibited her from offering evidence that would have related to a best-interest analysis, was improper. But unfortunately she did not assign this as error in her appellate brief. To receive consideration on appeal, a trial court's alleged error must be properly assigned as error, argued, and supported by legal authority and citation to the record.[14] Since this was not done here, we decline to address this argument.

{¶29} Accordingly, the second assignment of error is overruled.

{¶30} In his cross-appeal, the Father raises a single assignment of error, contending that the trial court erred when it failed to credit him with the child support he had paid between the date of his original Motion to Terminate or Modify

---

[14] See App.R. 16(A); see, also, *State v. Perez*, 1st Dist. Nos. C-040363, C-040364, and C-040365, 2005-Ohio-1326, ¶21-24.

Child Support and his Amended Motion to Terminate or Modify Child Support. We agree.

{¶31} As we have already noted, child-support orders are reviewed under an abuse-of-discretion standard.[15] This court has previously recognized that a trial court may retroactively modify a child-support award so that it becomes effective on the date that the motion to modify child support was filed.[16]

{¶32} Here, the Father filed his original motion to terminate child support on December 31, 2008. The trial court appears to have denied the Father's request to make the termination of child support retroactive to December 31, 2008, because the court believed that the Father had not requested a hearing on the initial motion. But that is not reflected in the record. Instead, the record demonstrates that a hearing was requested and originally set for February 19, 2009. But for reasons not related to the Father's conduct, the portion of his motion dealing with child support was not heard until May 13, 2010. And the Father merely filed an amended motion because it had been over a year since he had filed his first motion and he wanted the trial court also to consider his current financial situation in determining whether to terminate the child support.

{¶33} After a review of the record, we conclude that the trial court acted unreasonably and thus abused its discretion when it refused to make the termination of the Father's child-support obligation retroactive to the date he filed his original motion based on the court's mistaken belief that the Father had never requested a hearing for the motion. Therefore, the single assignment of error asserted in the cross-appeal is sustained.

---

[15] *Howell v. Howell*, 7th Dist. No. 08 CO 4, 2008-Ohio-6639, ¶39.
[16] *Torbeck v. Torbeck* (Sept. 28, 2001), 1st Dist. No. C-010022.

**{¶34}** For this reason, we modify the trial court's judgment to reflect that the Father's child-support obligation is retroactively terminated effective December 31, 2008. That part of the judgment relating to the amount overpaid by the Father is accordingly reversed, and this case is remanded for further proceedings so that the trial court can calculate the full amount due to the Father and enter an appropriate order providing for the payment of that amount. In all other respects, the trial court's judgment is affirmed.

Judgment accordingly.

**CUNNINGHAM, J.**, and **DINKELACKER, P.J.,** concur.

Please Note:

The court has recorded its own entry this date.