[Cite as *Hoff v. Hoff*, 2013-Ohio-1955.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| ANGELA HOFF, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2012-12-016 |
| | : | O P I N I O N |
| - vs - | | 5/13/2013 |
| | : | |
| JON N. HOFF, | : | |
| Defendant-Appellant. | : | |

APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2003DR4094

Angela Hoff, 1500 Seven Mile Road, Camden, Ohio 45311, plaintiff-appellee, pro se

Maria L. Spencer, 120 North Commerce Street, P.O. Box 221, Lewisburg, Ohio 45338, for
defendant-appellant

**PIPER, J.**

{¶ 1} Defendant-appellant, Jon Hoff, appeals an order of the Preble County Court of

Common Pleas, Division of Domestic Relations, determining his child support obligation.

{¶ 2} Hoff (Father) and Angela Hoff (Mother) were married in 1992, and had three

children born issue of the marriage. The parties were divorced in 2005, and Mother was

named residential parent for all of the children. Father was granted visitation with the

children, and also ordered to pay child support. In 2007, the parties entered into a shared parenting plan regarding their oldest child, which changed the terms of Father's visitation with that child, and that child eventually resided with Father.

{¶ 3}   In 2011, Father moved for an order granting him custody of the couple's two younger children and terminating his child support obligation. At the time Father made his motion, the couple's oldest child had become emancipated. The magistrate scheduled a hearing regarding Father's motion. Prior to the hearing, Mother and Father reached an agreement regarding custody of the two younger children. The magistrate then filed a magistrate's report and recommendation, which set forth the terms of the parties' agreement.

{¶ 4}   According to parties' agreement, Father was named residential parent of the two younger children for schooling purposes. Regarding living arrangements, the parties agreed that the middle child would reside with Father and that Mother would have standard visitation with that child. The parties agreed that the youngest child would reside with Mother, but Father would essentially have the child 50 percent of the time. The magistrate then set a hearing to determine child support, as the parties' agreement did not resolve child support issues.

{¶ 5}   Prior to the hearing, however, the parties reached an agreement regarding child support. Containing multiple calculations, the agreement was unconventional. The magistrate had the parties read their agreement into the record, as the agreement was "convoluted." The first calculation pertained to the prior period of time when the oldest child had not been emancipated and took into consideration that Father, at times, had three children in his care and that Mother had only one child, half of the time. The second calculation pertained to the time period after the oldest child was emancipated and was designed to take into consideration "the difference" between Father having two children and Mother having none, as compared to Father having one child and Mother having one. This

second calculation was seemingly intended to account for the fact that Father had custody of the middle child and shared custody of the youngest child, while Mother only had the youngest child half of the time.

{¶ 6} According to the agreement read into the record, to which all parties agreed, including the children's guardian ad litem, Mother would be responsible to pay Father the "difference" between the child support calculations representing that Father essentially had custody of one child full-time and another child part-time, and Mother only had custody of one child part-time.

{¶ 7} Despite the indication during the hearing that both parties agreed that Mother would be "paying the difference," the child support obligation ordered by the magistrate listed Father as the obligor and Mother as the obligee. Father was ordered to pay Mother $422.86 per month in child support. Father filed an objection with the trial court, arguing that the magistrate's child support order was erroneous. In its entry denying Father's objection, the trial court overruled Father's objection and found that Father failed to meet his "burden of convincing the Court that the Magistrate's Report and Recommendation is incorrect." Father now appeals the trial court's decision, raising the following assignment of error.

{¶ 8} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ADOPTING THE MAGISTRATE'S ORDER TITLED JUDGMENT ENTRY/CHILD SUPPORT AND MEDICAL SUPPORT FILED IN THE COURT ON AUGUST 20, 2012 IN ITS DECISION AND ENTRY FILED NOVEMBER 8, 2012.

{¶ 9} Father argues in his assignment of error that the trial court abused its discretion by overruling his objection to the magistrate's child support order.

{¶ 10} A trial court's decision regarding child support issues is reviewed for an abuse of discretion. *Vreeland v. Vreeland*, 12th Dist. No. CA2011-12-238, 2012-Ohio-4222. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the

- 3 -

court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 11} Father essentially argues that the trial court's order of child support was erroneous for two reasons. First, Father contends that the trial court abused its discretion when it ordered him to pay Mother child support because the parties agreed that Mother would be the obligor, and he the obligee. Normally, the law favors agreements and settlements in the domestic relations realm. *Hetterick v. Hetterick*, 12th Dist. No. CA2012-02-002, 2013-Ohio-15. However, and as stated by the Ohio Supreme Court,

> the difficult issue of child support may result in agreements that are suspect. In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures. The compromises may be in the best interests of the parents but not of the child. Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support.

*DePalmo v. DePalmo*, 78 Ohio St.3d 535, 540 (1997). As watchdog, the trial court has the discretion to decline an agreement regarding child support, even if the parties reached an agreement as to the parties' respective child support obligations or how such would be calculated. *Sandorf v. Sandorf*, 190 Ohio App.3d 355, 2010-Ohio-5326 (9th Dist.).

{¶ 12} The parties in this case acted with the belief that Father would be the obligee and Mother would be the obligor, with Mother paying the difference between that which Father would owe when he had the youngest child half of the time subtracted from that which Mother would owe Father when he had the middle child full time and the youngest child half of the time. While the parties, their respective attorneys, and the magistrate agreed to move forward with the parties' agreement that Mother was the obligor, the child support obligation worksheets within the record seem to indicate that Father was actually the obligor once his $49,000 salary was taken into consideration and compared against Mother's $9,360 salary.

{¶ 13} Once the final calculations were submitted, Father was the obligor, not Mother. The transcript contains no reference to the amount either party believed Mother would owe Father, and the attorneys did nothing to inform the court or make a record of what their clients believed the obligation would be. The parties' information was entered upon the child support obligation forms, and the record contains no less than six different calculations.

{¶ 14} After reviewing what little information is available from the record, it seems as though the trial court named Father as obligor based upon the use of the statutory child support obligation forms. Such a finding would not be erroneous given the court's discretion to employ the statutory calculations rather than an agreement between the parties. However, the record is insufficient for purposes of review, as there is no discussion regarding whether the parties' agreement was in the children's best interests, or for what reason the magistrate agreed to proceed with the parties' calculations and then subsequently rejected Mother as the obligor.

{¶ 15} Whatever agreement the parties hoped to employ was not reviewed by the magistrate to determine whether it was in the children's best interests, other than asking the children's guardian ad litem if she believed that using the multiple calculations was in the children's best interest *prior to* the final numbers being submitted to the court. Given the lack of information on the record, this court is unable to determine whether the trial court overruled Father's objections because rejecting the parties' agreement was in the children's best interests or because the trial court misinterpreted the multiple calculations and the parties' "convoluted" agreement.

{¶ 16} Simply stated, we cannot supplant our judgment for that of the trial court when reviewing child support issues. *See Preece v. Stern*, 12th Dist. Nos. CA2008-09-024, 2008-09-029, 2009-Ohio-2519 (recognizing that this court cannot perform a meaningful review of the trial court's decision absent a clear indication of its reasoning and analysis). While it may

appear from the record that the magistrate and trial court based their respective orders on the child support calculation sheet after finding the parties' agreement unworkable or improper, we cannot make that finding without proper support contained in the record.

{¶ 17} Father next argues that the trial court abused its discretion by not deviating from the child support order based upon the fact that he has the youngest child about half the time. Despite the fact that the parties informed the court that Father would have the youngest child half of the time, there is no indication in the record that the magistrate, or the trial court in overruling Father's objections to the magistrate's order, considered whether a deviation was proper according to R.C. 3119.23. Again, the record is insufficient for purposes of review, as there is no discussion of the factors found in R.C. 3119.23 regarding deviation, and we cannot supplant our judgment for that of the trial court when reviewing child support issues.

{¶ 18} Therefore, we reverse the decision of the trial court, and remand this case so that the trial court can have a sufficient record created. In so doing, we are sympathetic to the trial court, as the agreement in conjunction with the child support calculations were difficult to decipher. The parties proceeded with the expectation that Mother would be the obligor, and seem unaware of any impact the parties' disparity of income might have. Nor did Father's attorney present the trial court with comprehensive arguments or any concrete calculations regarding the alleged error within the magistrate's child support order.[1] Even so, the trial court must have a sufficient record supporting its determination to confirm the magistrate's decision regarding the issue of child support. This is especially important given the inarticulate and "convoluted" agreement of the parties. Should the trial court decide it is

---

1. Moreover, Father's attorney submitted a memorandum to the trial court in which she recognized that the child support calculations contained "mistakes," but also stated in the same memorandum that the calculation sheets themselves were "correct and prepared with the method discussed in Court." Little was done to aid the trial court and this court in understanding what the agreement was and exactly how it was not followed.

not in the children's best interests to comply with the parties' agreement as outlined, such must be sufficiently determined upon the record.

{¶ 19} Having found as such, Father's sole assignment of error is sustained, and the matter is remanded for further proceedings consistent with this opinion.

{¶ 20} Judgment reversed.

HENDRICKSON, P.J., and RINGLAND, J., concur.